UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TIMOTHY W. CALKINS and CHRISTINE A. CALKINS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-12044-GAO |
| v. | ) ) | |
| HARRAH'S ENTERTAINMENT, INC. /RIO PROPERTIES, INC. D/B/A RIO ALL-SUITE HOTEL & CASINO, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS COMPLAINT

The Defendant[1] hereby respectfully submits its memorandum of law in support of

*Defendant's Motion to Dismiss Complaint.* As set forth below, the Court should dismiss the

plaintiffs' *Complaint and Jury Demand* (the "Complaint") because (1) the Plaintiffs have

improperly purported to serve a non-existent entity; (2) this Court lacks personal jurisdiction over

the alleged defendant; and (3) venue more properly lies in the District of Nevada.

### RELEVANT FACTS

According to the Plaintiffs' Complaint[2], the Plaintiffs were vacationing in Las Vegas,

Nevada, in August of 2002. (Complaint, ¶ 8). Late at night on August 14, 2002, plaintiff Timothy

W. Calkins ("Mr. Calkins") was playing roulette at the Rio Suite Hotel & Casino (the "Rio"). (Id.

at ¶¶ 1 and 8). Mr. Calkins allegedly stepped backwards to sit on a chair. (Id. at ¶ 8). The chair

was not placed directly behind Mr. Calkins, allegedly because it had been moved during the

---

[1]  The defendant is misnamed in the caption, and in the body of the plaintiffs' Complaint, as "Harrah's
Entertainment, Inc./Rio Properties, Inc. d/b/a Rio All-Suite Hotel & Casino". There is no such legal entity.
[2]  The Defendant does not admit the factual allegations in the Complaint, but rather, reserves its right to challenge the
factual allegations made by the Plaintiffs.

course of the evening by a Rio employee. (Id.) Mr. Calkins lost his balance, fell, hit his head on a roulette table that was located behind him, and sustained cuts on his head. (Id. at ¶¶ 8, 9).

The Plaintiffs allege, as the sole specific contacts between the alleged defendant and Massachusetts, that (1) "on information and belief . . . [the Plaintiffs] were initially enticed to stay at the Rio through the internet", and allegedly made a hotel reservation to stay at the Rio "through the Rio's interactive website"; (2) that the defendant mailed a confirmation of the reservation and promotional material to the Plaintiffs' home in Massachusetts; and (3) that since the incident alleged in the Complaint, Rio has sent advertising and marketing materials to the Plaintiffs. (Id. at ¶ 7).

Cognizant that the expiration of the relevant Nevada statute of limitations was about to expire on any claim that they might have arising out of Mr. Calkins' fall, the Plaintiffs filed their Complaint, purporting to allege claims of negligence (Count I), negligent hiring, training and/or supervision (Count II), vicarious liability/respondeat superior (Count III), and loss of consortium (Count IV). (Id. at ¶¶ 20-32).

## ARGUMENT

### I.    There Is No Such Entity As That Named By The Plaintiffs, And Therefore This Court Should Dismiss The Plaintiffs' Complaint.

Simply put, there is no legal entity named "Harrah's Entertainment, Inc./Rio Properties, Inc. d/b/a Rio All-Suite Hotel & Casino", the entity that the Plaintiffs has named as the defendant in their Complaint. (See *Affidavit of Scott L. Malouf, ("Malouf Affidavit")* ¶ 2). The Plaintiffs purported to serve the alleged defendant by delivering the Complaint to Corporation Service Company, addressed to "Harrah's Entertainment, Inc." (Id. at ¶ 3 and Exhibit 1). "Harrah's Entertainment, Inc". is not a named defendant in the Complaint. Moreover, Harrah's

2

Entertainment, Inc. has no relationship to the facts and claims alleged by the Plaintiffs. (See, supra.)

It is a given that "there is *no* proper service when the person served is an officer of a corporation not named a defendant." *Adams v. Allied Signal General Aviation Avionics*, 74 F.3d 882, 886 (8th Cir. 1993) (emphasis in original). Since the Plaintiffs failed to serve the Complaint on a legal entity named in the Complaint, the Complaint must be dismissed. See also, *Gonzalez v. Temple Mountain Ski Resort, Inc.*, 613 F. Supp. 354, 355 (D. Mass. 1985) (complaint designating non-existent corporation, which had been served on different corporation not named as party defendant, subject to dismissal); Leemon v. South Jersey Port Commission, 145 F. Supp. 828, 830 (D.C.N.J. 1956) (where alleged defendant not a legal entity, alleged defendant not subject to service of process). Accordingly, the Court should quash the purported service of the Complaint by the Plaintiffs, and the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(4) and (5).[3]

### This Court Lacks Personal Jurisdiction Over the Alleged Defendant.

Even if the Plaintiffs had named a legal entity as a defendant, and served their Complaint on the proper legal entity, the plaintiffs' Complaint nonetheless would be subject to dismissal for lack of personal jurisdiction. Because this Court has jurisdiction over the action based on diversity, the Court must apply state law in determining if it can exercise personal jurisdiction over the alleged defendant. Shipley Co. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990). Under Massachusetts law, a court may exercise personal jurisdiction over an out-of-state defendant only when authorized to do so by the Massachusetts long-arm statute, G.L. c. 223A, § 3, and when the

---

[3] The distinction between the insufficiencies addressed by Fed. R. Civ. P. 12(b)(4) and (5) is often blurred, and it therefore is appropriate to analyze service issues under both rules. *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 884 n.2 (8th Cir. 1996) (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1353, at 277 (2d ed. 1990)).

exercise of jurisdiction is consistent with the Due Process Clause of the United States

Constitution.  Cunningham v. Ardox, Inc., 40 Mass. App. Ct. 279, 281 (1996).

It is the Plaintiffs' burden to establish facts sufficient for this Court to exercise personal

jurisdiction over the Defendant.  Lavalle v. Parrott-Ice Drink Prods. of America, Inc., 193 F. Supp.

2d 296, 298 (D. Mass. 2002); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151

(1978).

The Plaintiffs allege that this Court has personal jurisdiction over the Defendant based

upon subsections (a) and (d) of the Massachusetts long-arm statute, M.G.L. c. 223A § 3.  (See

Complaint at ¶ 6).  Those sections of the Massachusetts long-arm statute provide, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts
> directly or by an agent, as to a cause of action in law or equity
> arising from the person's:
>
> (a)    transacting any business in the commonwealth; …
>
> (d)    causing tortious injury in this commonwealth by an act or
> omission outside this commonwealth if he regularly does
> or solicits business, or engages in any other persistent
> course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in this
> commonwealth….

G.L. c. 223A, § 3.

As shown below, the facts in this case do not support the exercise of personal jurisdiction over the

Defendant in this case under either of those provisions.

**A.  Section 3(d)  does not apply to the facts alleged in the Complaint.**

To establish jurisdiction under § 3(d) of the Massachusetts long-arm statute, a plaintiff

must allege, and show, (1) a tortious injury in Massachusetts arising out of an act or omission

outside the Commonwealth; and  (2) that the alleged defendant does or solicits business, or

engages in any other persistent course of conduct, or derives substantial revenue from goods used

or consumed or services rendered in Massachusetts.  See G.L. c. 223A, § 3(d).

4

As described in the Complaint, the alleged injury occurred in Nevada, not in Massachusetts.  When the alleged injury stems from an out-of-state incident, personal jurisdiction over the alleged defendant cannot be found under section 3(d) of the Massachusetts long-arm statute.  E.g., <u>Crocker v. Hilton Intern. Barbados, Ltd.</u>, 976 F.2d 797, 799-800 (1st Cir. 1992)(no personal jurisdiction under §3(d) over out-of-state defendant where injury occurred out-of-state, in Barbados); <u>Mello v. K-Mart Corp.</u>, 604 F.Supp. 769, 771 (D. Mass.1985) (no personal jurisdiction over out-of-state defendant under § 3(d) where injury occurred in Tennessee).

"[T]he Massachusetts long-arm statute…specifies that a court may exercise jurisdiction over a foreign corporation only if the cause of action *arises from* some action or event which took place within the state."  <u>Mello,</u> 604 F. Supp. at 772. (emphasis in original).  Where "no aspect of the incident on which the plaintiffs base their claims transpired in Massachusetts", §3(d) provides no basis for the exercise of jurisdiction over the out-of-state defendant.  <u>Id.</u>   It is irrelevant that the Plaintiffs may have suffered effects from the out-of-state injury in Massachusetts.  <u>Id.</u> at 771-72; <u>Crocker,</u> 976 F.2d at 800.   <u>See also,</u> <u>United States v. Swiss American Bank, Ltd.</u>, 191 F. 3d 30, 38 (1st. Cir. 1999) ("section 3(d) requires that the injury itself occur in Massachusetts, and does not apply merely because the plaintiff feels the effects of a tortious injury there").  Therefore, personal jurisdiction in Massachusetts over the alleged defendant in this case cannot – as a matter of law – be found under §3(d) of the Massachusetts long-arm statute.[4]

### B. Section 3(a) does not provide this Court with a basis for exercising personal jurisdiction over the defendant either.

Massachusetts courts interpret § 3(a) of the long-arm statute as permitting the exercise of

---

[4]    In addition, the Plaintiffs have not alleged facts from which the Court could conclude that the alleged defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth….", as is required for the exercise of personal jurisdiction under section 3(d).

personal jurisdiction only to the extent that due process requirements allow. Thus, in determining whether to exercise personal jurisdiction over an out-of-state defendant, courts often  proceed directly to  due process analysis.  Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63 (1st Cir. 2002).

The Due Process Clause of the United States Constitution requires that there be sufficient minimum contacts between the defendant and the forum such that the exercise of personal jurisdiction over a defendant comports with "traditional notions of fair play and substantial justice." Brookfield Mach., Inc. v. Calbrit Design, 929 F. Supp. 491 (D. Mass. 1996)(citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Such sufficient "minimum contacts" are not present here.

The First Circuit employs a three-part test to determine whether sufficient contacts exist:

1      The claim underlying the litigation must directly rise out of, or relate to, the defendant's in-forum activity;

2.     The defendant's in-state contacts must represent a purposeful availment of the privileges of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and

3.     The exercise of jurisdiction must, in light of certain "gestalt" factors, be reasonable.

Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995); Cambridge Literary Properties, 295 F.3d at 63.  Application of that three-part test to the facts presented here demonstrates that the Plaintiffs cannot establish personal jurisdiction over the out-of-state defendant under section 3(a).

**1.      The Plaintiffs' claims fail the "relatedness" test, the first step of the inquiry.**

To satisfy the "relatedness" requirement, "the action must directly arise out of the specific contacts between the defendant and the forum state". Sawtelle, 70 F.3d at 1389.  The defendant's in-state conduct must form an important or material element of proof in the plaintiff's case.

6

Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999)(citing

Marino v. Hyatt Corp., 793 F. 2d 427, 430 (1st Cir. 1986)).  There must be a causal nexus between

the defendant's Massachusetts contacts and the plaintiff's claim or cause of action.  Cambridge

Literary Properties, 295 F.3d at 64.

> "[I]n deciding whether specific [personal] jurisdiction exists, the legal theory advanced is
> important primarily to tell us what alleged *conduct* matters to the case in hand.  The basis
> for specific jurisdiction is that a defendant's Massachusetts contacts not only exist but are
> sufficiently related to the events that make up the case."

Id.  "[D]ue process demands something like a 'proximate cause' nexus . . .".  Id. at 65.  Contacts

that do not relate to the Plaintiffs' claims do not help the Plaintiffs satisfy their burden to prove the

relatedness element of the jurisdictional inquiry.  Sawtelle, 70 F.3d at 1389.

        The few Massachusetts contacts alleged by the Plaintiffs have no causal nexus to the

alleged injury and conduct that form the basis of the Plaintiffs' claims.  (See Complaint, passim).

The acts that allegedly caused the Plaintiffs' injuries occurred entirely in Nevada, not in

Massachusetts.

        At bottom, the Plaintiff's Complaint is one of negligence.  To prevail on their negligence

claim, the Plaintiffs must prove that: (1) the defendant owed Mr. Calkins a duty of care; (2) the

defendant breached that duty of care; (3) the breach was the actual cause of plaintiff's injury; (4)

the breach was the proximate cause of Mr. Calkin's injury; and (5) Mr. Calkins' suffered damages.

Kusmirek v. MGM Grand Hotel, Inc., 73 F.Supp.2d 1222, 1224 (D. Nev. 1999)(citing Perez v.

Las Vegas Medical Center, 107 Nev. 1, 4, 805 P.2d 589 (1991)).  None of the Massachusetts

contacts alleged in the Complaint as relevant to the jurisdictional inquiry -- i.e., the Plaintiffs'

making a the hotel reservation via a website, mailings to Plaintiffs, and alleged Internet

"advertisements" -- are material to the elements that the Plaintiffs must prove to prevail on their

negligence claim.  Accordingly, those contacts are irrelevant to the personal jurisdiction inquiry.

See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996)(hotel's solicitation in Massachusetts not proximate cause of decedent's death at hotel in Hong Kong); Degasse v. Plant Hotel, N.V. 113 F. Supp.2d 211, 217-218 (D.N.H 2000)(television advertisements, receiving and confirming reservation via a toll-free telephone number and confirmation of reservation mailed to New Hampshire were not legal [proximate] causes of personal injuries at Aruba hotel); Figueroa Colon v. Radisson Cable Beach Resort, 310 F.Supp.2d 437, 439 (D.P.R. 2004)(no causal connection between personal injury at Bahamas hotel and defendant's alleged contacts with Puerto Rico, to wit, a website that provided plaintiff with hotel promotions, prices and packages and hotel activities, and use of travel agent in Puerto Rico to make reservations); Rodriguez v. Circus Circus Casinos, Inc., 2001 WL 21244, *3 (S.D.N.Y. 2001)(making hotel reservation over website had no nexus to plaintiff's alleged personal injury from fall at Nevada casino; no personal jurisdiction over defendant).

The other counts of the Complaint -- negligent hiring/training vicarious liability/respondeat superior and loss of consortium -- fare no better. The Defendant's alleged contacts with Massachusetts are not related to elements of those claims either.

In sum, since the Massachusetts contacts alleged by the Plaintiffs, to support their allegation of jurisdiction, are entirely unrelated to the Plaintiffs' causes of action, the Plaintiffs cannot satisfy the "relatedness" requirement in the minimum contacts analysis, and the Complaint therefore should be dismissed for lack of personal jurisdiction.

### 2. The Plaintiffs cannot satisfy the second part of the "sufficient contacts" test -- purposeful availment – either.

The function of the purposeful availment requirement is to ensure that personal jurisdiction is not premised solely upon the defendant's "random, isolated, or fortuitous" contacts with the

8

forum state. <u>Sawtelle</u>, 70 F.3d at 1391. The purposeful availment analysis focuses on two concepts: voluntariness and foreseeability. <u>Id</u>.

Addressing first the "voluntariness" requirement, nothing about the Defendant's alleged contacts with Massachusetts (a website that accepted reservations for hotel rooms, Internet "advertising," mail to plaintiffs) leads to the conclusion that the defendant purposefully availed itself of the benefits and protections of Massachusetts law. The services promoted (a hotel room) were outside of Massachusetts, and the alleged Massachusetts contacts are de minimus. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1391 ("gravely doubtful" that defendant attorneys purposefully availed themselves of benefits and protection of New Hampshire's law by providing legal services outside of New Hampshire). <u>See also</u>, <u>Austad Co. v. Pennie & Edmonds</u>, 823 F.2d 223 (8th Cir. 1987)(no jurisdiction in South Dakota over New York law firm even though law firm made numerous phone calls and mailings to former client located in South Dakota and conducted three day fact-finding mission in South Dakota relative to Maryland litigation); <u>Phillips Exeter Academy</u>, 196 F.3d at 289 (no protection of New Hampshire law rendered to defendant where defendant's contact with New Hampshire was mere payments to school located in New Hampshire).

Furthermore, even assuming that the Plaintiffs, while they were in Massachusetts, made a reservation through a website to stay at the Rio, the Plaintiffs' allegation – made "upon information and belief" -- that they were "enticed" to stay at the Rio through the internet is suspect. The records of the Rio show that the Plaintiffs had stayed at the Rio on at least one prior occasion, in the year 2000. (See *Malouf Affidavit*, Ex. 2). The Plaintiffs' familiarity with the Rio thus quite apparently was due to their prior visit to the Rio in the year 2000, not to any advertisement on a website in 2002. Under such circumstances, there is no significant connection between the fact that the Plaintiffs may have made reservations using the internet in Massachusetts, and the alleged injury at the Rio in Nevada. <u>See</u>, <u>Sheridan v. Ascutney Mountain</u>

9

Resort Services, Inc., 925 F. Supp. 872, 878 (D. Mass. 1996)(dismissing complaint for lack of personal jurisdiction where plaintiff's prior familiarity with Vermont ski resort negates contention that plaintiff was in Vermont because of resort's solicitation of business in Massachusetts).

The "foreseebility" requirement likewise is not satisfied here. The Defendant's alleged contacts with Massachusetts did not make being haled into Massachusetts courts to defend this case foreseeable. At best, the Defendant's conduct amounted to providing persons such as the Plaintiffs with the ability to make a reservation at the Rio using the internet, rather than using a telephone. Nothing about that ubiquitous type of internet capability suggests that a defendant might foresee being required to appear in the Massachusetts courts to defend against a lawsuit arising from a fall in Nevada. See Massachusetts School of Law v. American Bar Association, 142 F.3d 26, 36-37 (1st Cir. 1998)(where defendant's contacts consisted of a telephone conversation, mailing a memorandum and a meeting in Boston of limited relevance, defendant could not have foreseen being haled into Massachusetts court to answer allegations of conspiracy).

As the Defendant's alleged contacts with Massachusetts were neither a voluntary acceptance of the benefits and protections of Massachusetts law, nor the kind of activity that made being haled into the Massachusetts courts reasonably foreseeable, the Plaintiffs have not satisfied the "purposeful availment" requirement.

### 3.   Consideration of the "gestalt" factors does not save the Plaintiffs.

The "gestalt" factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.   Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994). In conducting minimum contacts analysis, courts consider this "'panoply of other factors which bear upon the fairness of subjecting a

nonresident to the authority of a foreign tribunal'". Id., quoting <u>United Electrical Workers v. 163</u>
<u>Pleasant St. Corp.</u>, 960 F.2d 1080, 1988 (1st. Cir. 1992). "The gestalt factors are not ends in
themselves, but they are, collectively, a means of assisting courts in achieving substantial justice.
In very close cases, they may tip the constitutional balance." Id.

As the discussion above shows, this is not a close case – neither the "relatedness" nor
"purposeful availment" requirements are satisfied. Accordingly, the gestalt factors are of less
significance in the Court's analysis. Even if it were a "close case," consideration of the "gestalt"
factors still would not tip the scale in favor of exercising personal jurisdiction over the Defendant.

The first factor -- the burden of appearing in a foreign forum --is a wash. Although the
burden of appearing in Massachusetts would be substantial for the Defendant, the Plaintiffs would
bear a similar burden appearing in Nevada.

The second factor – Massachusetts' interest in adjudicating this lawsuit – weighs in favor
of the Defendant because Massachusetts has limited interest in this dispute. The subject of the
dispute is an alleged fall that occurred in Las Vegas, Nevada. Although Massachusetts generally
may wish to provide a forum for its citizens, a more appropriate forum exists in Nevada.

Third, although the Plaintiffs have chosen Massachusetts as their forum, it is not the most
convenient venue in which to try the case. (See Part III, infra.) The Defendant, third-party
witnesses, site of the incident, and documents and other materials most relevant to the issue of
liability are all in Nevada.

Finally, the fourth and fifth factors (the interest of the judicial system and the common
interest of all sovereigns) weigh in favor of the Defendant because the interest of the judicial
system and public policy are best served by adjudicating disputes in the forum where the alleged
activity occurred. In this case, all the relevant activity occurred in Nevada.

Accordingly, the Plaintiffs' claims fail the "minimum contacts" test. Requiring the Defendant to litigate in Massachusetts would violate notions of fair play and substantial justice. This Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2).

### III. Venue More Properly Lies in the District of Nevada, and the Court Should Dismiss This Case on Grounds of Forum Non Conveniens.

In addition, the Court should also dismiss the case, pursuant to Fed. R. Civ. P. 12(b)(3), under the doctrine of forum non conveniens. Dismissal of a case on the grounds of forum non conveniens is appropriate where (1) an adequate alternative forum exists, and (2) considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum Iragorri v. Internat'l Elevator, Inc., 203 F.3d 8, 12 (1st. Cir. 2000). Both of those requirements are satisfied here.

First, "[c]ourts generally deem the first requirement satisfied if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and the defendant is amenable to service of process there." Id. It is beyond dispute that the Nevada state and federal courts provide an adequate alternative forum for the Plaintiffs. In addition, the proper defendant here—the operator of the Rio -- is a Nevada corporation, with a principal place of business in Nevada. It follows that the real, proper defendant is amenable to service of process in Nevada. Accordingly, the courts in Nevada provide an adequate alternative forum for the Plaintiffs.

Second, considerations of convenience and judicial efficiency strongly favor litigating the claim in Nevada, for "the compendium of factors relevant to the private and public interests implicated by the case strongly favor dismissal." See Iragorri, 203 F. 3d at 12. The factors relevant to the litigants' private interests include: the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining

the attendance of willing witnesses, and the possibility of viewing the premises where appropriate to the action. Id. Evaluating private interests also requires the Court to consider all other practical problems that make a trial easy, expeditious and inexpensive. Id. "Factors relevant to the public interest include such things as the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." Id., quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947).

Applying those factors to the case at hand, it is quite clear that consideration of those private and public interests strongly favors dismissal of the Plaintiffs' Complaint on grounds of forum non conveniens. The private interest factors all favor litigating the case in Nevada. The alleged incident, Mr. Calkins' fall, occurred in Nevada. A viewing of the layout of the area where the fall occurred will be part of the case. Other than Mr. Calkins[5], the percipient witnesses to the incident appear to all be residents of Nevada, for example, the employees of the Rio, the paramedic who happened to be at the Rio at the time of the incident, and the physician who first treated Mr. Calkins. (See, Complaint, ¶¶ 8-13.). None of those witnesses will be amenable to service of process in Massachusetts. A number of them are not even employees of the Rio. The cost of either bringing all of those witnesses to Massachusetts (assuming that they would be willing to come here) would be extremely high, and far outweigh the cost of the Plaintiffs traveling to Nevada. Consideration of the public interest factors similarly weighs in favor of dismissing the case. This is not a controversy local to Massachusetts. It arises from a fall at a casino in Las Vegas, Nevada. To the extent that there could be any interest among the general citizenry in the outcome of the case, they would be persons in Nevada. There is simply no reason

---

[5] It does not appear that Mrs. Calkins was present at the time of the incident. (See Complaint, ¶ 8).

why the courts of Massachusetts and the citizens of Massachusetts who are potential jurors at trial, should be burdened with the task of deciding the Plaintiffs' claims.

In sum, this is a dispute that belongs in the courts of Nevada, and this Court should dismiss the case on the grounds of forum non conveniens.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Court should grant *Defendant's Motion to Dismiss Complaint*, and should dismiss the plaintiffs' Complaint, with prejudice, and award the Defendant its costs and expenses, including attorneys' fees, incurred in connection with preparing and filing this Motion to Dismiss.

DEFENDANT
By its attorneys,

/s/ Ann Pauly
Ann Pauly (BBO #546197)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110
(617) 542-9900

Dated:  October 4, 2004

Certificate of Service

I, Ann Pauly, hereby certify that, on October 4, 2004,
I caused a true copy of the foregoing to be served by U.S.
Mail upon counsel for the defendants.

/s/ Ann Pauly
Ann Pauly

14