UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY W. CALKINS and CHRISTINE A. CALKINS, )<br><br>Plaintiffs, )<br><br>v. )<br><br>HARRAH'S ENTERTAINMENT, INC., HARRAH'S OPERATING COMPANY, INC., RIO PROPERTIES, INC., RIO HOTEL & CASINO, INC. d/b/a RIO ALL-SUITE HOTEL & CASINO and the RIO, )<br><br>Defendants. ) | Civil Action No. 04-12044-GAO |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

### INTRODUCTION

This personal injury action arises out of the defendants' negligence in the maintenance of their casino premises, and in the hiring, supervision and/or retention of their employees.  On or about August 14, 2002, Mr. Calkins sustained substantial injuries to his head and neck at the Rio All-Suite Hotel & Casino in Las Vegas, Nevada, when, unbeknownst to Mr. Calkins, one of Rio's employees removed a chair from behind him before he went to sit down on it while he was playing Roulette.  Mr. Calkins lost his balance and struck his head and neck forcefully on a Roulette table behind him, resulting in immediate severe pain, cognitive defects and long-term injuries including neck and shoulder pain and headaches.  In this action, the plaintiffs have asserted claims of negligence, vicarious liability, and loss of consortium against the defendants. Complaint, attached as Exhibit 1.

In the Motion now before the Court, defendants' Harrah's Entertainment, Inc./Rio Properties, Inc. D/B/A Rio All-Suite Hotel & Casino have challenged the propriety of the Court's jurisdiction over it and have also moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) under the doctrine of forum non conveniens. Plaintiffs oppose this Motion and submit their memorandum of Law and accompanying Affidavit of Timothy W. Calkins and Nancy Cunningham in opposition to defendants' Motion. Simply put, the Plaintiffs' cause of action arises from the defendants' successful solicitation of these Massachusetts residents through online advertising, maintenance of an interactive website, acceptance of a room reservation and payment, and specific solicitation of the plaintiffs through promotional mailings to their home. These actions render along with the defendants subject to the Court's jurisdiction under M. G. L. c.223A, § 3, the Massachusetts long-arm statute. Furthermore, the defendants' voluntary solicitation of customers in Massachusetts, including the plaintiffs, made it reasonably foreseeable that they would be haled into Court in Massachusetts consistent with constitutional principles of due process and traditional notions of fair play and substantial justice. Moreover, the defendants have not proven that the plaintiffs' chosen forum of Massachusetts is so inconvenient that it would be unfair to conduct the litigation therein. For these and other reasons more fully detailed below, the defendants' attempt to dismiss this case and avoid defending this action in Massachusetts has no merit and should be denied.

## FACTS

The plaintiffs Timothy and Christine Calkins first went to the Rio All-Suite Hotel & Casino in Las Vegas, Nevada (hereinafter "the Rio") for a vacation in August of 2000. Affidavit of Timothy W. Calkins. Calkins Affidavit, ¶ 2, attached as Exhibit 2. Mr. Calkins selected the Rio after he had researched the hotel and the casino and discovered its

advertisements on its website. Calkins Affidavit, ¶2. He then made reservations online through the Rio's interactive website from his home in Brewster, Massachusetts. When they returned from their vacation in 2000, and through the next year 2001, the Calkins received frequent mailings at their home from the Rio, which included promotional and marketing letters and brochures. Calkins Affidavit, ¶ 3. The purpose of the promotional materials was to entice the plaintiffs to return to the Rio through offers of room discounts and notifications of upcoming special events. As a result, Timothy and Christine Calkins considered returning to the Rio in the summer of 2002, but felt they could not afford it at that time. Calkins Affidavit, ¶ 3-4. A friend of the Calkins', Nancy Griffin, who was living with them, heard their conversation about wishing to return to the Rio. As a result, she arranged reservations for them for August 13 – 20, 2002 as a surprise gift. Ms. Griffin booked the reservations on-line through the Rio's interactive website. Calkins Affidavit, ¶ 5-6; Complaint, ¶ 8. Ms. Griffin subsequently received an email from the Rio confirming the reservations. Calkins Affidavit, ¶ 6, Exhibit A to same.

On August 14, 2002, Timothy Calkins was playing Roulette at the Rio's Casino. Complaint, ¶ 8. He stood up from his chair and leaned forward to place a bet. Thereafter, without his knowledge, an employee of the Rio walked behind him and removed Plaintiff's chair. Complaint, ¶ 8. Mr. Calkins, who was unaware that his chair had been moved, went to sit down and instead lost his balance and fell backward. Complaint, ¶ 8. Mr. Calkins hit his head and neck on a Roulette table behind him, and fell to the floor. Complaint, ¶ 8. He suffered two gashes in the back of his head, bled profusely and immediately felt severe head and neck pain. Complaint, ¶ 8. Mr. Calkins' injury was recorded by the Rio video surveillance camera on a video tape. Complaint, ¶ 12-13.

During the time period shortly after the accident, Mr. Calkins experienced severe headaches and pain as well as persistent tingling in his left hand. Complaint, ¶ 14. For six to eight months after the accident, he suffered cognitive defects, which included short-term memory loss and difficultly concentrating. Complaint, ¶ 14. Eventually, Mr. Calkins underwent MRI studies, which showed evidence of cervical disc bulges that his neurosurgeon concludes resulted from the head and neck trauma he sustained at the Rio. Complaint, ¶ 16. Despite physical therapy, Mr. Calkins continues to suffer constant neck and shoulder pain, which is sharp at times. He also has headaches and tingling in his left arm and hand, which have not abated since the accident. Complaint, ¶ 17.

After the accident and the plaintiffs' return from the Rio, and through 2003, Mr. and Mrs. Calkins continued to receive promotional and marketing materials from the Rio at their home in Brewster, Massachusetts. Calkins Affidavit, ¶ 3, Exhibit B to same. In addition, while watching television in his home, Mr. Calkins recently viewed a one-hour long segment on the Discovery Channel featuring the Rio's hotel and casino in Las Vegas, Nevada. Calkins Affidavit, ¶ 11; E-mail confirmation of program from Discovery Channel, attached as Exhibit 3.

## ARGUMENT

### I.   THE PLAINTIFFS HAVE FILED AN AMENDED COMPLAINT.

The plaintiffs have filed, simultaneously with this Opposition, an Amended Complaint pursuant to Fed. R. Civ. P. 15(a). The Amended Complaint separates the defendant Harrah's Entertainment, Inc./Rio Properties, Inc. d/b/a Rio All-Suite Hotel & Casino, Inc. and creates three separate corporate defendants and also adds Harrah's Operating Co., Inc. (HOT).[1]

---

[1] Of note, the plaintiffs styled the original complaint with all defendants being interconnected because the defendants' claims adjuster described them as such in pre-suit correspondence.

The exact interrelationship among the above entities, and which entity (or entities) owns and/or manages the casino where the incident occurred, has not been conclusively determined at this early stage in the litigation. Based on information and belief, in August of 1998, Harrah's Entertainment, Inc. ("HET") purchased the Rio Hotel & Casino (also known as Rio All-Suite Hotel & Casino or the Rio) in Las Vegas. See Boston Globe article, attached as Exhibit 4. Furthermore, Harrah's web page lists the Rio All-Suite Hotel & Casino as one of "Our Casinos." See web page, attached as Exhibit 5. In addition, the Securities and Exchange Commission Form 10-K (obtained through the Rio's website) states that Harrah's Entertainment, Inc. acquired and "owns or manages" "The Rio All-Suite Hotel & Casino" in Las Vegas. See Form 10K at p. 4 and 6, attached as Exhibit 6. It also confirms that HET employees include those at the Rio and lists the Rio as one if its properties. See Exhibit 6, at p. 7 and 8. Therefore, it is difficult to accept the defendants' position in their memorandum that HET "has no relationship to the facts and claims alleged by the Plaintiffs."

Moreover, HOT must be added to this suite because the Form 10K also states that "[HET's] business is conducted through a wholly-owned subsidiary, Harrah's Operating Company, Inc., which owns or manages various subsidiaries [sic] 25 casinos in the United States." See Exhibit 6 at p. 3.

Furthermore, a Dunn & Bradstreet Report for Rio Properties, Inc. indicates that Rio Properties, Inc. is a "(subsidiary of Rio Hotel & Casino, Las Vegas, NV) Rio Suite Hotel & Casino." See Report, attached as Exhibit 7

Therefore, until discovery has proven otherwise, the plaintiffs must pursue litigation against all four entities. Pursuant to Fed. R. Civ. P. 15(a), the plaintiffs filed the Amended Complaint without leave of Court since none of the defendants filed an answer to the plaintiffs'

original Complaint. Furthermore, pursuant to Fed. R. Civ. P. 15(c), since the Amended Complaint changes the party or naming of the party, the Amended Complaint relates back to the date of the original pleadings. In addition, all requirements of Rule 15(c)(2) and (3) have been satisfied in that the claims in the Amended Complaint against the newly named defendants arise out of the conduct in the original Complaint, and the defendants will not be prejudiced by this amendment, particularly in light of their interrelationship and sufficient prior notice of the plaintiffs' claims.

For jurisdictional purposes, HET, HOC, Rio Properties, Inc., and Rio Hotel & Casino, Inc. are all located in Nevada and share the same agent for service of process. See Secretary of State information, attached as Exhibit 8. In addition, HET, HOC, and Rio Hotel & Casino, Inc. all have the exact same principal office address – One Harrah's Court, Las Vegas, Nevada.

## II.    THE PLAINTIFFS HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS.

### A.    Jurisdictional Principles.

This court has personal jurisdiction over the defendants because the plaintiffs' claims satisfy the two-fold requirements: (1) the claims arise out of the defendants' contacts with the forum state pursuant to provisions of the Massachusetts long-arm statute, G. L. c. 223A; and (2) the exercise of *in personam* jurisdiction in this case is consistent with constitutional notions of due process. See Foster-Miller, Inc. v. Babock & Wilcox Canada, 46 F. 3d 138, 144 (1st Cir. 1995); Pritzker v. Yari, 42 F.3d 53 (1st Cir. 1984). Where as here, the subject matter jurisdiction is based upon diversity of citizenship, the law of the forum, Massachusetts, is applied to determine whether personal jurisdiction exists. See Sawtelle v. Farrell, 70 F.3d. 1381, 1387 (1st Cir. 1995).

6

## B.    Standard of Proof.

In determining a motion to dismiss for want of personal jurisdiction, the district court considers only whether the plaintiff has proffered evidence that if credited is sufficient "to support findings of all facts essential to personal jurisdiction." Rooney v. Walt Disney World Co., 2003 U.S. Dist. LEXIS 22226, quoting from Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); Nowak v. Tak How Inv. Ltd., 899 F. Supp. 25, 27 (D. Mass. 1995), aff'd, 94 F.3d 708 (1st Cir. 1996). The Court will "take facts affirmatively alleged by plaintiff as true and construe disputed facts in the light most hospitable to plaintiff." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Where, as here, material facts are not in dispute and affidavits are not incredible, the plaintiffs need only make a prima facie showing in order to prevail. Nowak, 94 F.3d at 712.

## C.    Personal Jurisdiction is Appropriate Under the Massachusetts Long-Arm Statute.

Section 3(a) of the Massachusetts long-arm statute provides, in pertinent part, that a Massachusetts court may exercise personal jurisdiction: "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's...transacting any business in this commonwealth." M.G.L. c. 223A, § 3(a). Thus, there are two requirements in order to establish jurisdiction under M.G.L. c. 223A, § 3(a): (1) that the defendant have transacted business in Massachusetts; and (2) that the plaintiff's claim have arisen from the transaction of such business. Nowak, 94 F. 3d at 712, citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994).

The defendants in this matter proceed directly to the due process analysis in their Motion, and do not argue that the plaintiffs cannot satisfy the two statutory requirements for jurisdiction  pursuant to G. L. c.223A, § 3(a). Accordingly, any argument that the defendants

7

did not "transact business" or that the plaintiffs' claims do not arise from "the defendant's transaction of such business" is either conceded or waived. Christopher v. Mount Snow, Ltd., 1996 U.S. Dist. LEXIS 14948 at 5 and cases cited therein, (plaintiff deemed to have waived argument on personal jurisdiction where not pled and included in brief).

Nevertheless, in the event that the Court does not consider such arguments waived, the plaintiffs provide the following analysis as to how their claims meet the requirements of the M.G.L. c. 223A, § 3(a).

### 1. The Rio Transacts Business in Massachusetts.

In determining whether a defendant has engaged in activities amounting to the transaction of business in Massachusetts, the "transacting business" clause of § 3(a) is broadly construed. Morse v. Walt Disney World Co., 675 F. Supp. 42, 43 (D. Mass. 1987)("The language 'transacting any business' is to be construed broadly, and reaches any purposeful acts, whether personal, private, or commercial."). Courts assess a defendant's individual transaction with a Massachusetts resident in light of the defendant's solicitation of business from the Commonwealth. Id. The Massachusetts Supreme Judicial Court in Tatro ("SJC") has explained that

> [A]lthough an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement. Id. at 767.

When a minor transaction is part of "a larger systematic effort to obtain business from Massachusetts businesses and residents," a foreign defendant has transacted business under § 3(a). Sigros v. Walt Disney World, Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001), citing Tatro, 416 Mass. at 769. In Tatro, a defendant non-resident hotel accepted a reservation from a Massachusetts resident by telephone. The SJC found that this constituted transacting business

8

under the long-arm statute because that contact was part of a broader attempt to solicit business from Massachusetts. 416 Mass. at 768-69. This District Court has interpreted Tatro to stand for the proposition that § 3(a) is satisfied "when there is persistent advertising and solicitation of business from Massachusetts residents, even if it only involves a single sale...." Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 465-66 n.19 (D. Mass. 1997).

In cases regarding non-resident hotels, Massachusetts District courts has found that a hotel's acceptance of reservations and payments, correspondence with plaintiffs and the mailing of promotional materials, in the context of solicitation of forum-resident's business, may constitute the transaction of business pursuant to § 3(a). See Morse, 675 F. Supp. at 44. (holding that Disney had transacted business in Massachusetts by sending information to travel agents in Massachusetts, accepting reservations and payments from the plaintiff in Massachusetts, sending correspondence such as billing invoices, written confirmations and promotional literature to the plaintiff's home in Massachusetts.).

In Rooney, the plaintiff, a Massachusetts resident, was injured by an employee of the "BoardWalk Inn and Villas Resort" in Florida. The District Court had "no difficulty" finding that the defendant's solicitation of business from the plaintiffs, which included advertising and mailing a promotional video to the plaintiffs in Massachusetts and booking their vacation over the telephone, satisfied the requirements of the long-arm statute. 2003 U.S. Dist. LEXIS 22226 at 6.

In Sigros, the plaintiffs (mother and daughter) sued Walt Disney in the District Court of Massachusetts for personal injuries the daughter sustained at the Disney resort in Florida. 129 F. Supp. 2d at 57. The Sigros plaintiffs alleged that relatively isolated contacts between the parties, including telephone calls and mailings, occurred against a backdrop of Disney's

9

solicitation of Massachusetts residents, including advertisements for Walt Disney's World, the

Magic Kingdom, Epcot Center and/or MGM Studios. Id. at 64. The Court found that the

mother's phone call to the Disney 800 number and the various mailings between Disney and the

mother were sufficient to establish that Disney had been transacting business for purposes of

§ 3(a) . The Court rejected Disney's arguments that its advertising in Massachusetts could not

support personal jurisdiction because it was part of a national or regional advertising campaign

and was not aimed at a narrowly defined market. Id. at 65. Instead, the Court held that "**any**

**advertising** activity by Disney and/or WDA in Massachusetts merely supplements the more

specific contacts between Disney/WDA and Sophie, which this Court has found sufficient to

establish personal jurisdiction." Id. (Emphasis added.)

In Nowak, the plaintiff's employer, Massachusetts-based Kiddie Products, Inc., made

reservations, after a series of exchanges by telecopier, for several employees including the

plaintiff and his wife, at a hotel in Hong Kong owned by the defendant. 94 F. 3d. at 711.

While a registered guest at the hotel, the plaintiff's wife drowned in the hotel swimming pool.

The Court concluded that the long-arm statute was satisfied where the plaintiffs' claims were

"made possible by" and were "in the wake of" the Hotel's successful solicitation of Kiddie's

business, and promotional materials that included the pool as an attraction. 899 F. Supp. at 31

citing Tatro, 416 Mass. at 771.

In the instant case, the Rio clearly engaged in the purposeful and successful solicitation

of business from residents of the Commonwealth. The Rio mailed promotional literature about

the hotel and the casino directly to the plaintiffs' home for approximately one year following

their first visit. Calkins Affidavit ¶ 4. This had the hoped for effect that they would return to

the Rio and use its casino, where Mr. Calkins was injured. In addition, the Rio accepted

reservations through its interactive website and confirmed the reservation through e-mail. Calkins Affidavit ¶ 6, Exhibit A to same. The fact that the plaintiffs' friend made the reservation for them is irrelevant for purposes of this analsysis. In Nowak, it was the plaintiff's employer, not the plaintiff, who made the Hong Kong hotel reservation. 899 F. Supp. at 28. In addition, the Rio has advertised itself through the internet, which is how the plaintiffs discovered and were attracted to the Rio and its casino. See Tatro, 416 Mass. At 767. Nevertheless, any advertising that the Rio may have done during this time merely supplements the specific and direct contacts the Rio had with the plaintiffs, which impose jurisdiction under the long-arm statute. Indeed, in Nowak, there was no evidence of any advertising by the Hong Kong hotel in Massachusetts outside of its direct solicitations of the plaintiffs' employer. Id.

The plaintiffs have therefore alleged contacts that fall squarely within the Court's definition of "transacting business" pursuant to § 3(a). See Sigros, 129 F. Supp. 2d at 65; Morse, 675 F. Supp. 2d at 43; Tatro, 416 Mass. at 767.

### 2. The Plaintiffs' Injuries Arose From the Transaction of Business.

An injury arises from the transaction of business in the Commonwealth, if "but for" that contact, there would have been no injury. Sigros, 129 F. Supp. 2d. at 65-66. The First Circuit has adopted the Massachusetts Supreme Judicial Court's "but for" standard for determining when an injury arises from the transaction of business. Sigros, 129 F. Supp. 2d. at 65-66. In Tatro, the SJC held that the resident plaintiff's injuries "arose from" a California hotel's transaction of business in Massachusetts because, but for the hotel's solicitation of her business and agreement to provide her with a hotel room in California, the plaintiff would not have been injured at the hotel. 416 Mass. at 770-72. The SJC concluded that the Massachusetts resident's in-forum act of reserving a room in an out-of-state hotel "is considered the first step in a train of

events that results in personal injury." Id. at 770.  This District Court applied Tatro in Sigros,

and concluded that the plaintiff daughter's injury at Disney clearly "arose from" her mother's

act of reserving a room because, "but for" that contact, she would not have been injured.

Sigros, 129 F. Supp. 2d at 65-66.

      In this case, but for the Rio's solicitation of the plaintiffs, with direct mailings, and the

agreement to provide them with a hotel room, and casino offerings, Timothy Calkins would not

have been injured.  The Rio's mailing of an email confirmation for the Calkins' reservation and

the acceptance of payment for that reservation are concrete steps in the train of events leading

to Mr. Calkins' injury.  See Sigros, 129 F. Supp. 2d. at 65-66.  Accordingly, the plaintiffs'

injury clearly arose from the defendants' transaction of business in the Commonwealth pursuant

to § 3(a).  See Sigros, 129 F. Supp. 2d. at 65-66; Tatro, 416 Mass. at 771-772.

      Therefore, the plaintiffs have established that this Court has jurisdiction under the

Massachusetts Long Arm statute, M. G. L. c. 223A, § 3(a), because the defendants transacted

business in Massachusetts and the plaintiffs' claims arose from the transaction of such business.

Nowak, 94 F. 3d at 712.

    **D.**    **Personal Jurisdiction is Appropriate Under the Due Process Clause.**

      The due process clause of the United States Constitution requires minimum contacts

between a nonresident defendant and a forum state such that the exercise of personal

jurisdiction over that defendant accords with "traditional notions of fair play and substantial

justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  In analyzing

minimum contacts, courts have distinguished between two kinds of personal jurisdiction:

"general" and "specific."  General jurisdiction exists when the litigation is not directly founded

on the defendant's forum-based contacts, but the defendant has nevertheless engaged in a

systematic activity, unrelated to the suit, in the forum state. United Elec. Workers v. 163

Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) ("Pleasant St. I"). Specific jurisdiction,

by contrast, narrows a court's focus to a "specific set of interactions as a basis for personal

jurisdiction." Foster-Miller, Inc., 46 F.3d at 144. If the Court finds that it has specific

jurisdiction, it need not address the question of general jurisdiction. Sigros, 129 F. Supp. 2d. at

66.

      The First Circuit utilizes a three-part analysis to determine if sufficient contacts exist to

exercise specific personal jurisdiction: (1) the claim underlying the litigation must relate to the

defendant's forum-state activities; (2) the defendant's in-state contacts must constitute a

purposeful availment of the privilege of conducting activities in that state, thereby invoking the

benefits and protections of that state's laws, and making it foreseeable that the defendant could

be haled into court in that state; and (3) the exercise of jurisdiction must, in light of the Gestalt

factors, be reasonable. 163 Pleasant St. Corp., 960 F.2d at 1089; see also Pritzker, 42 F.3d at

60-61.

### 1. The Plaintiffs' Claims Arise Out of, or Relate to, the Rio's In-Forum Activities.

      The first consideration under the tripartite framework is whether the plaintiffs' claims

arise out of, or relate to, the Rio's in-forum activities. Sawtelle, 70 F.3d at 1389. The

relatedness inquiry is a "flexible, relaxed standard." Sigros, 129 F. Supp. 2d. at 66 citing

Pritzker, 42 F.3d at 60-61. In 163 Pleasant St. Corp., the First Circuit explained that at this

stage of the analysis it is important to bear in mind the nature of the plaintiff's claim and to

consider whether the plaintiff's cause of action can "conceivably be said to have arisen directly

from, or been caused proximately by," the defendant's contacts with the forum. 960 F.2d at

1089.

This proximate cause test requires an "arising from" analysis distinct from the "but for" analysis undertaken under the Massachusetts long-arm statute. <u>Nowak</u>, 899 F. Supp. at 30. Contrary to the defendants' assertions, this Court does not apply a rigid proximate cause test. <u>Nowak</u>, 94 F.3d at 715 ("[W]e are persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive."). Instead, the First Circuit applies a "small overlay of 'but for' on 'proximate cause'". <u>Nowak</u>, 94 F.3d at 715-16. In this analysis, the Court assesses the nexus between the plaintiff's injury and the defendant's activities in the forum state. <u>Id.</u> The rationale is that:

> [W]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. **If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, the Court finds a strong nexus between the contacts and the cause of action to survive the due process inquiry at least at the relatedness stage.** <u>Nowak</u>, 94 F. 3d. at 715-16 (emphasis supplied).

Applying the relatedness test, the First Circuit in <u>Nowak</u> upheld the district court's finding that the hotel's solicitation of the plaintiffs' business resulting in the reservation of a set of rooms for Kiddie employees and their spouses, set in motion "a chain of reasonably foreseeable events resulting in Mrs. Nowak's death." <u>Id.</u> The Court noted that the hotel had included the pool as an attraction in its promotional materials, and that the possibility that solicitation would be successful and a guest would use the pool was foreseeable. <u>Id.</u> In <u>Nowak</u>, the Court concluded that although the hotel's solicitation was not the proximate cause of Mrs. Nowak's death, it did "represent a meaningful link" to the harm suffered, sufficient to maintain jurisdiction. 94 F.3d. at 716; <u>see also</u> <u>Rooney</u>, 2003 U.S. Dist. LEXIS 22226 at 11.

The facts in this case clearly fall within the First Circuit's standard for relatedness. In 2000 and 2001, the Rio continuously sent promotional materials enticing Mr. Calkins to return

and gamble in its casino. These solicitations were the reason the plaintiffs wanted to return to

the Rio. Mr. Calkins was injured while gambling in the Rio's casino and, therefore, was

harmed "while engaged in activities integral to the relationship the corporation sought to

establish." Nowak, 94 F. 3d. at 715-16. Even if the solicitations to return and gamble in the

casino were not the proximate cause of Mr. Calkins' injury, they represented a "meaningful

link" to the harm suffered. In other words, these solicitations set in motion a chain of events

that caused Mr. Calkins to return to the Rio for vacation.[2] The nexus between the Rio's

contacts and the plaintiffs' cause of action is sufficiently strong to survive the due process

inquiry regarding relatedness. See id.

### 2.   *The Rio Purposefully Avails Itself of the Privilege of Conducting Business in Massachusetts.*

The second element of the constitutional prong of specific personal jurisdiction analysis

involves a determination of whether the defendant's contacts with the forum state represent a

"purposeful availment" of the privilege of conducting business in that state. Ticketmaster, 26

F.3d at 207. The cornerstones of the "purposeful availment" inquiry are voluntariness and

foreseeability. Id. A defendant's contacts with the forum state must be voluntary, "not based

on the unilateral actions of another party or a third person." Nowak, 94 F.3d at 716, citing

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). In addition, the defendant's

contacts with the forum state must be such that it should reasonably anticipate being haled into

court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

A defendant's contacts are voluntary when it reaches out to solicit residents of the forum

state. See Sigros, 129 F. Supp. 2d at 68 (holding although the plaintiff initiated contact with

---

[2] The fact that the plaintiffs' friend made the reservations for them also is irrelevant for purposes of this analysis. Again, in Nowak, it was the employer, not the employee or his wife, who had contact with the defendant hotel and made the reservations. See Nowak, 899 F. Supp. at 28.

Disney, through the advertising for its resorts, Disney plainly "reached into Massachusetts with

an unprompted solicitation and sought to entice Massachusetts residents to leave the state and

visit its...facilities."); Nowak, 899 F. Supp. at 32; see also Mallon v. Walt Disney World Co.,

42 F. Supp. 2d 143, 145 (D. Conn. 1998) (holding that Disney, acting through its agent WDA,

"deliberately reached out" to attract Connecticut residents to their resort).

When, a defendant deliberately solicits residents of the forum state, it is foreseeable to

that defendant that it will be haled into Court in that state. In Rooney, this District Court

explained:

> Here, Disney targeted its advertising campaign at Massachusetts to lure Massachusetts
> residents to vacation at its resort in Florida…..The result -- Rooney's trip to Florida –
> was the very result the defendants sought when they directed their advertisements at
> Massachusetts residents. Their efforts to solicit business from Massachusetts customers
> "rendered foreseeable the possibility of being haled into a Massachusetts court." 2003
> U.S. Dist. LEXIS 22226 at 10.

See also Nowak, 94 F.3d. at 717, (finding possibility of being haled into Massachusetts court

foreseeable where defendant solicited Massachusetts corporation for the purpose of bringing

employees of that corporation to its hotel in Hong Kong).

In this second stage of constitutional analysis, Massachusetts District Courts have also

considered whether a defendant's web-based contacts among other contacts constitute

purposeful availment of the benefits and protections afforded by Massachusetts' laws. Venture

Tape Corp. v. McGills Glass Warehouse, 292 F. Supp. 230, 232-233 (D. Mass. 2003); Hasbro,

Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 45 (D. Mass. 1997), aff'd 232 F.3d 1 (1st Cir.

2000); Digital Equipment Corp., 960 F. Supp. at 470. First Circuit District Courts consider the

nature and quality of commercial activity conducted on a defendant's website. See Hasbro, 994

F. Supp. at 45. In particular, District Courts assess the level of interactivity of a defendant's

website. Where a defendant maintains a so-called "passive" website that simply makes

16

information available to a user, the site is less likely to be among contacts that constitute

purposeful availment. See Comer v. Comer, 295 F. Supp. 2d 201, 210 (D. Mass. 2003). But,

where a website is "interactive" and permits a user to exchange information with a host

computer, it may be among contacts that constitute purposeful availment. See Hasbro, 994 F.

Supp. at 45.

In Hasbro, the Court found that Clue Computing had availed itself of the benefits of

doing business in Massachusetts by advertising its work for a Massachusetts corporation on its

interactive website. 994 F. Supp. at 45. The Court held:

> Additionally, Clue Computing's Web site is interactive, encouraging and enabling
> anyone who wishes, including Massachusetts residents, to send email to the company.
> The nature and quality of commercial activity that Clue Computing conducted over the
> Internet satisfies the "purposeful availment" due process test. Id.

In the case at bar, the defendants maintained, and still do maintain, an interactive

website that serves as an advertising vehicle for the casino and permits users to make

reservations online. An interactive website is most likely to constitute "purposeful availment"

when a defendant interacts with residents of the forum state via that website, or when the

defendant solicits residents of the forum state. Cf. Venture Tape Corp., 292 F. Supp. at 232-

233. Unlike Venture Tape Corp, where the plaintiff "presented no evidence of sales made to

Massachusetts residents, or specific solicitations directed at the Commonwealth," in this case,

the plaintiffs' reservations for *both visits* to the Rio were made through the Rio's interactive

website. Moreover, Rio's website is linked to a Massachusetts-specific website,

http://www.boston.com ("Boston.com"). Boston.com is a website primarily devoted to

providing information to the residents of Massachusetts, including news and events in

Massachusetts and links to attractions and resorts its residents may find enticing. The website

provides Massachusetts residents with, among other things, access to an entire webpage of

information regarding Las Vegas in its "Top Destinations" link, which has a "Related Advertising Link" to the Rio. See Exhibit 9  From this page, a Massachusetts resident can click a button called "Make Reservation."  In addition, the plaintiff recently saw a one hour segment on the Rio while watching the Discovery Channel.  This segment featured many attractions of the Rio and its casino.  Calkins Affidavit, ¶11; Exhibit 3.

Through Rio's interactive website, its internet and television advertising, and its mailings of promotional materials to the Calkins' home in Massachusetts, the defendants purposefully sought to establish contacts with Massachusetts residents.  See Nowak, 94 F.3d. at 716 (finding proximate cause where the resident was harmed in activities that the out-of-state corporation sought).  The Rio conducted a deliberate and systematic solicitation of business from Massachusetts.   In the case of the Calkins, this solicitation had the very result that the defendants sought: the plaintiffs visited the Rio.  In this technological age, advertising on a newspaper's website is no different than placing an advertisement in the newspaper itself.  Furthermore, by maintaining an interactive website that allows people (such as the plaintiffs) to make reservations directly with the Rio, the Rio has demonstrated a desire and deliberate intent to get Massachusetts residents to use its casino.  Finally, the Rio must have contracted directly with The Boston Globe in Massachusetts in order to advertise on this site.  Through these actions, the defendants voluntarily availed themselves of the benefits of doing business in Massachusetts and could reasonably anticipate being haled into court in this forum.  See Sigros, 129 F. Supp. at 63; Digital Equip. Corp., 960 F. Supp. at 465-66 n.19.

### 3. Personal Jurisdiction Satisfies the Gestalt Factors.

The third and final stage of the due process analysis affords an opportunity for concepts of reasonableness to illuminate that review. World-Wide Volkswagen Corp., 444 U.S. at 292 (1980). The Supreme Court has identified five such considerations, termed by the First Circuit, "the gestalt factors": 1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. Pleasant St. I, 960 F.2d at 1088, citing Burger King Corp., 471 U.S. at 477.

### a. The Defendants' Burden of Appearance.

Because there is always a burden of appearing in a foreign jurisdiction, for this particular gestalt factor to have any significance, a defendant must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." Nowak, 94 F.3d. at 718, quoting from Pritzker, 42 F.3d at 64. In Sigros, Disney contended that appearing before this Court would be burdensome because Disney was itself located in Florida, the locus of the accident was in Florida, and numerous indispensable witnesses, primarily Disney employees, resided in Florida. 129 F. Supp. 2d. at 65. However, the Court concluded that these inconveniences did not constitute unusual or constitutionally significant burdens. Id. Instead, as noted by the District Court in Nowak, they are "but an ancillary cost of doing business within this district." Nowak, 899 F. Supp. at 34. The Sigros Court acknowledged that if in Nowak the burdens faced by a Hong Kong defendant were insufficient to activate this gestalt factor in its favor, then clearly such burdens were even less availing to Disney. Sigros, 129 F. Supp. 2d at 69.

As with Disney and the Hong Kong hotel, the Rio, located in Nevada, will experience *some* burden in defending itself in Massachusetts. However, the First Circuit has recognized that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. Nowak, 94 F.3d at 718. The defendants in the instant case admit they face no burden defending this action in Massachusetts that is greater than plaintiffs' burden. This gestalt factor therefore supports the plaintiffs' argument that it is reasonable to require the defendants to defend themselves in Massachusetts.

### b.  The Forum State's Adjudicatory Interest.

"Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims." Nowak, 94 F.3d at 718. Although Mr. Calkins' injury occurred in Nevada, significant events leading up to that injury took place in Massachusetts thus giving Massachusetts an interest in the instant litigation. By providing an interactive website through which the plaintiffs residing in Massachusetts residents could make on-line reservations and by soliciting the plaintiffs at their Massachusetts residence, the defendants have provided the forum state with a particularly compelling interest in adjudicating this matter. Accordingly, this factor also weighs in the plaintiffs' favor.

### c.  The Plaintiffs' Convenience.

Courts assessing jurisdictional issues generally accord plaintiffs' choices of forum a degree of deference. Nowak, 94 F.3d at 718. In this case, deference should be accorded to the plaintiffs' choice of Massachusetts. A Massachusetts forum is obviously more convenient for the plaintiffs than a Nevada forum, especially in light of the debilitating pain that Mr. Calkins still suffers. In addition, Mr. Calkins is a self-employed plumber. Trips to Nevada for

depositions and trial would prove to be economically, as well as physically, strenuous for him.
The plaintiff's treating physician, a critical witness, also resides in Massachusetts. This gestalt
factor, therefore, cuts in favor of the plaintiffs.

### d.   The Administration of Justice.

The fourth gestalt factor "focuses on the judicial system's interest in obtaining the most
effective resolution of the controversy." Nowak, 94 F.3d at 718. This consideration counsels
against splintering a dispute among several different jurisdictions, which would both
"contravene the goal of judicial economy and conjure up the chimera of inconsistent
outcomes." See Pritzker, 42 F.3d. at 64. The purpose of this inquiry is to determine the extent
to which a forum may have an adjudicatory interest other than concern for the rights of its
domicilaries. See Sawtelle, 70 F. 3d. at 1395. This gestalt factor does not favor either the
plaintiffs or defendants. See Sawtelle, 70 F. 3d. at 1395.

### e.   Pertinent Policy Arguments.

The final gestalt factor requires this Court to consider the interests of the affected forum
states in substantive social policies. See Nowak, 94 F.3d at 719. As noted earlier,
Massachusetts has a clear interest in protecting its citizens from foreign providers of goods and
services and in affording those citizens a convenient forum in which to bring their claims. Id.
As in Nowak, here Massachusetts' interest in protecting its citizens slightly outweighs the
interest of an out-of-state hotel protecting its businesses. Id.

On balance, the Gestalt Factors demonstrate that it is fair and reasonable to expect the
defendants to defend themselves in Massachusetts where the plaintiffs were solicited to visit the
Rio, and where the plaintiffs and the plaintiffs' treating physician reside. The exercise of
jurisdiction in Massachusetts over defendants Harrah's Entertainment, Inc./Rio Properties, Inc.

D/B/A Rio All-Suite Hotel & Casino is consistent with, and certainly does not offend, traditional notions of fair play and substantial justice. Accordingly, this Court should deny the defendants' motion to dismiss for lack of jurisdiction.

### E.    Forum non Conveniens.

The doctrine of forum non conveniens grants discretion to this Court to dismiss a case when the chosen forum is so inconvenient that it would be unfair to conduct the litigation therein. See Howe v. Goldcorp Investments, Ltd., 946 F.2d 944, 947 (1st Cir. 1991). The doctrine is to be used to avoid "serious unfairness." Nowak, 94 F.3d. at 719. "Where the plaintiff is a resident of the forum in which an action is brought, a defendant faces an extremely difficult task in persuading a court that an action should be dismissed for forum non conveniens." Thomson Information Services, Inc. v. British Telecommunications, 940 F. Supp. 20, 24 (D. Mass. 1996). The plaintiff's choice of forum will rarely be disturbed. Nowak, 94 F.3d. at 719.

When an alternative forum has jurisdiction to hear a case, the District Court may dismiss a case on grounds of forum non conveniens:

> upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems. Nowak, 94 F.3d. at 720, quoting from Koster v. Lumbermens Mut. Co., 330 U.S. 518.

A party moving for dismissal bears the burden of establishing that (1) there is an adequate alternative forum, and (2) considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum. Mercier v. Sheraton International, Inc., 935 F.2d 419, 423 (1st Cir. 1991).

The U.S. Supreme Court has identified private and public interest factors that guide this District Court in determining whether the balance of convenience and judicial efficiency favors litigating the claim in the alternative forum. A defendant moving to dismiss for forum non conveniens must establish that the private and public interest factors weigh heavily on the side of trial in the alternative forum. Mercier, 935 F.2d at 423. Private interest factors include relative ease of access to sources of proof, availability of compulsory process, comparative costs of trial, and ability to enforce a judgment. Nowak, 94 F.3d. at 719. Public interest factors include the practical difficulties of unnecessarily hearing a case more fairly adjudicated somewhere else. Id. at 720. In this case, neither the private or public interest factors strongly favor litigating this claim in Nevada. As discussed above, the plaintiffs and Mr. Calkins' treating physician all reside in Massachusetts making proof from those sources readily available in this forum. A video tape recorded the events of Mr. Calkins' injury, which should also be readily available for viewing in Massachusetts. Litigating this case in Nevada would impose a heavy burden upon the plaintiffs, which is not outweighed by the defendants' preference for the alternative forum. The defendants have not demonstrated that a serious unfairness would result from deciding this case in Massachusetts. See Nowak, 94 F.3d. at 720. Accordingly, this Court should deny the defendants' Motion to dismiss under the doctrine of forum non conveniens.

## CONCLUSION

For each of the reasons set forth above, plaintiffs Timothy and Christine Calkins respectfully request that this Court deny defendants Harrah's Entertainment, Inc./Rio Properties, Inc. D/B/A Rio All-Suite Hotel & Casino's motion to dismiss for lack of jurisdiction and on grounds of forum non conveniens.

In the event that this Court determines that additional information is necessary in order to conclude whether there is personal jurisdiction over the defendants, the plaintiffs respectfully request that this Court order a discrete period of time to permit the plaintiffs to conduct appropriate and thorough discovery on matters relating to jurisdiction.

Respectfully submitted,

TIMOTHY W. CALKINS and
CHRISTINE A. CALKINS

By their attorneys,

Christopher R. O'Hara (BBO # 548611)
Jeffrey N. Catalano (BBO # 567798)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA  02109
(617) 720-2626

Dated:

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail-hand on