UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TIMOTHY W. CALKINS and<br>CHRISTINE A. CALKINS,<br><br>             Plaintiffs,<br><br>v.<br><br>HARRAH'S ENTERTAINMENT, INC.<br>HARRAH'S OPERATING COMPANY,<br>INC., RIO PROPERTIES, INC., RIO<br>HOTEL & CASINO, INC. d/b/a RIO<br>ALL-SUITE HOTEL & CASINO and the<br>RIO,<br><br>             Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 04-12044-GAO |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

The Defendants[1] hereby respectfully submit this memorandum of law in support of the

*Motion to Dismiss Plaintiffs' Amended Complaint*. As set forth below, the Court should dismiss

the plaintiffs' *Amended Complaint and Jury Demand* (the "Amended Complaint") because (1) the

Plaintiffs have failed to serve the proper defendants; (2) this Court lacks personal jurisdiction over

the alleged defendants; (3) venue more properly lies in the District of Nevada; and (4) Plaintiffs

have failed to allege, in part, claims upon which relief can be granted.

---

[1]  The defendant was misnamed in plaintiffs' initial Complaint as "Harrah's Entertainment, Inc./Rio Properties, Inc.
d/b/a Rio All-Suite Hotel & Casino". There is no such legal entity. See, *Affidavit of Scott L. Malouf* (Docket ("Dkt.")
No. 5, ¶ 2). While the Plaintiffs arguably served the original defendant with the Amended Complaint when it was
filed with the Court,  none of the other alleged defendants have been served to date.

## RELEVANT FACTS

According to the plaintiffs' Amended Complaint[2], the Plaintiffs were vacationing in Las Vegas, Nevada, in August of 2002. (Amended Complaint, ¶ 11). Late at night on August 14, 2002, plaintiff Timothy W. Calkins ("Mr. Calkins") was playing roulette at the Rio Suite Hotel & Casino (the "Rio"). (Id. at ¶¶   and 11). Mr. Calkins allegedly stepped backwards to sit on a chair. (Id.). The chair was not placed directly behind Mr. Calkins, allegedly because it had been moved during the course of the evening by a Rio employee. (Id.) Mr. Calkins lost his balance, fell, hit his head on a roulette table that was located behind him, and sustained cuts on his head. (Id.).

Cognizant that the relevant Nevada statutes of limitation were about to expire[3] on any claim that they might have arising out of Mr. Calkins' fall, the Plaintiffs filed their initial Complaint against "Harrah's Entertainment, Inc./Rio Properties, Inc. d/b/a Rio All-Suite Hotel & Casino". Served with a motion to dismiss the initial Complaint that is based in part on the fact that there is no such entity,[4] the Plaintiffs filed an Amended Complaint. In their Amended Complaint, the Plaintiffs have deleted "Harrah's Entertainment, Inc./Rio Properties, Inc. d/b/a Rio All-Suite Hotel & Casino" as a defendant. The Plaintiffs have added four new defendants: (1) Harrah's Entertainment, Inc., (2) Harrah's Operating Company, Inc., (3) Rio Properties, Inc., and (4) Rio Hotel & Casino, Inc. d/b/a/ Rio All-Suite Hotel and Casino and the Rio. (Amended Complaint, ¶¶ 1, 4, 5, 6, 7). The Plaintiffs purport to allege a total of 13 counts -- separate claims of Negligence; Negligent Hiring, Training, Supervision and/or Retention; and Vicarious Liability/Respondeat

---

[2]  The Defendants do not admit the factual allegations in the Amended Complaint, but rather, reserve the right to challenge all allegations made by the Plaintiffs.

[3]  Nevada law, including the Nevada statutes of limitation, apply to the claims in this case. See, e.g., Bergin v. Dartmouth Pharmaceutical, Inc., 326 F. Supp. 2d 179 (D. Mass. 2004); Nierman v. Hyatt Corp., 441 Mass. 693, 808 N.E. 2d 290 (2004). The applicable statute of limitations under Nevada law for the claims alleged in the Amended Complaint is two years. See NRS 11.190.

[4]  See Defendant's Motion to Dismiss Complaint, and its supporting memorandum of law and affidavit, filed with the Court on October 4, 2004 (Dkt. Nos. 3, 4, 5 ).

Superior against each of the four newly-named defendants (Counts I through XII); and a single

claim for Loss of Consortium against all of the defendants. (Id. at ¶¶ 23-68).

## ARGUMENT

I.    **The Plaintiffs Have Failed to Serve the Defendants, and Therefore This Court Should Dismiss the Plaintiffs' Amended Complaint.**

On or about September 1, 2004, the Plaintiffs purported to serve "Harrah's Entertainment,

Inc./Rio Properties, Inc. d/b/a Rio All-Suite Hotel & Casino", the defendant alleged in their initial

Complaint, by delivering their Complaint to Corporation Service Company, addressed to

"Harrah's Entertainment, Inc." – a corporation that was not named as a defendant in that

Complaint. (See *Affidavit of Scott L. Malouf* (Dkt. No. 5) at ¶ 3 and Exhibit 1). Accordingly, a

motion to dismiss was filed, arguing *inter alia*, that since the Complaint had not been served on

the named defendant, and the Complaint named a non-existent entity, it should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(4) and (5).[5]

Although the Plaintiffs then filed an Amended Complaint naming four new defendants, the

Plaintiffs have not served those newly-named defendants.

II.    **Even if the Plaintiffs Had Served Their Amended Complaint on the Proper Defendants, This Court Lacks Personal Jurisdiction Over the Alleged Defendants.**

A.    **The Plaintiffs' Allegations of Fact in Support of the Exercise of Personal Jurisdiction Over the Defendants are Refuted by the Record.**

To support their allegation that this Court has personal jurisdiction over each of the four

named defendants, the Plaintiffs allege: (1) "upon information and belief" – and without

differentiation among the Defendants -- that the Defendants use a variety of media and other

forms of advertisement to reach persons and/or businesses located in Massachusetts; (2) "upon

---

[5] The distinction between the insufficiencies addressed by Fed. R. Civ. P. 12(b)(4) and (5) is often blurred, and it therefore is appropriate to analyze service issues under both rules. *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 884 n.2 (8th Cir. 1996) (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1353, at 277 (2d ed. 1990)).

information and belief" that the Plaintiffs were "enticed" to stay at the Rio through the Internet, where the Rio purportedly advertised its resort and casino; (3) that their reservations were made and confirmed through the Rio's interactive website; (4) that the Rio allegedly advertises on television and through the Boston Globe's website, www.boston.com.; and (5) that the Rio mailed confirmation and promotional or marketing materials to the Plaintiffs. (Amended Complaint, ¶ 10).

As an initial matter, those allegations are flatly contradicted by materials that the Plaintiffs themselves submitted to the Court in support of *Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint* (Dkt. No. 9). According to the *Affidavit of Timothy W. Calkins* (Dkt. No. 9, Ex. 2) ("Calkins Aff."), the reservations were made by a friend of the Plaintiffs, Nancy Griffin, who made the reservations at the Rio because she overheard the Plaintiffs make positive comments about the Rio, not because she saw any advertising placed by any of the Defendants. Id. at ¶¶ 5-7. Moreover, Ms. Griffin made the reservations on an independent website that is not related to the Defendants, a website called www.i4vegas.com which includes information about many different, unrelated hotels, not just the Rio. (See *Affidavit of Kenneth R. Knapp, Esq.* ("Knapp Aff.") ¶¶ 4-7 and Exs. 2, 3, 4, 5, 6; Calkins Aff., Ex. A). In sum, the record before the Courts shows that the hotel reservation at issue in this case most certainly was not made on a "Rio interactive website", or in response to any advertisement by any of the alleged defendants.

B.    Even if the Court Were to Credit the Plaintiffs' Allegations, the Facts Alleged Do Not Support the Exercise of Personal Jurisdiction Over the Defendants.

This Court has subject matter jurisdiction over this case based on diversity of citizenship. Accordingly, the Court must apply state law in determining if it can exercise personal jurisdiction over an alleged defendant. Shipley Co. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990). Under Massachusetts law, a court may exercise personal jurisdiction over an out-of-state defendant only

4

(1) when authorized to do so by the Massachusetts long-arm statute, Mass. Gen. L. c. 223A, § 3, and (2) when the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. Cunningham v. Ardox, Inc., 40 Mass. App. Ct. 279, 281 (1996). It is the Plaintiffs' burden to establish facts sufficient for this Court to exercise personal jurisdiction over the Defendants. Lavalle v. Parrott-Ice Drink Prods. of America, Inc., 193 F. Supp. 2d 296, 298 (D. Mass. 2002); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). It appears that the Plaintiffs contend that this Court has specific (as opposed to general) jurisdiction over the Defendants.

      1.     The Plaintiffs Have Failed to Meet the Requirements of the Massachusetts Long-Arm Statute.

In their Amended Complaint, the Plaintiffs allege that this Court has personal jurisdiction over the Defendants based upon subsection (a) of the Massachusetts long-arm statute, Mass. Gen. L. c. 223A, § 3. (See Amended Complaint, ¶ 9)[6]. Section (a) provides, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:
>
>     (a)    transacting any business in the commonwealth; . . .

As shown below, the facts in this case do not support the exercise of personal jurisdiction over the Defendants in this case.

To establish personal jurisdiction under § 3(a), the Plaintiffs need show, as to each defendant, that that particular defendant: (1) transacted business in the Commonwealth; and 2) that the Plaintiffs' claims arise from the transaction of that business. *See* Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass.  , 5-6 (1979).

---

[6] In their initial Complaint, the Plaintiffs also alleged that the Court had personal jurisdiction over the defendant under Mass. Gen. L. c. 233A, § 3(d). As shown in the *Memorandum in Support of Defendant's Motion to Dismiss Complaint* (Dkt. No. 4) at pp. 4 - 5, the law is very clear that section (d) does not apply to the facts alleged here.

a. The Plaintiffs cannot show that the Harrah's Defendants transacted business in Massachusetts.

The Plaintiffs have not alleged that either Harrah's Entertainment, Inc. or Harrah's Operating Company, Inc. (together, the "Harrah's Defendants") had any contacts with Massachusetts that were in any way related to the Plaintiffs' claims in this case. At best, the Court may deem that the Plaintiffs have alleged -- "upon information and belief" -- that the Harrah's Defendants have used media and advertising to reach persons and businesses in Massachusetts. (See Amended Complaint, ¶ 10). That vague allegation does not satisfy the required "relatedness" test. (See discussion of "relatedness", infra). In fact, the Harrah's Defendants do not purchase local advertising in Massachusetts, and do not advertise on the websites (www.i4vegas and www.Boston.com) at issue in this case. (Affidavit of Michael Kostrinsky, Esq., ¶¶ 3, 4). Moreover, neither of the Harrah's Defendants owns any real estate, or has any offices or employees in Massachusetts. (Id., ¶ 5). Accordingly, the Plaintiffs cannot show that the Harrah's Defendants "transacted business" in Massachusetts, and the Court should order the Harrah's Defendants dismissed from this action.

b. The Plaintiffs also have not shown that the Rio Defendants transacted business in Massachusetts.

The Plaintiffs likewise have failed to satisfy the "relatedness" test with respect to their allegations against Rio Properties, Inc. and Rio Hotel & Casino, Inc. d/b/a Rio All-Suite Hotel & Casino and the Rio (the "Rio Defendants"). In his affidavit, Mr. Calkins states that the hotel reservation that placed the Plaintiffs at the Rio on the night of the alleged incident in August of 2002 was made not by either of the Plaintiffs, but rather was made by a third party, Nancy Griffin. (See Calkins Aff., ¶ 6). Ms. Griffin learned about the Rio not from any advertisement placed by any of the Defendants, or sent to the Plaintiffs, but rather from conversations between the

6

Plaintiffs that she overheard about a trip that they had made to Las Vegas two years earlier.

Moreover, Ms. Griffin made that reservation on a third-party website that apparently offers

discounted room reservations at many hotels, all over the country, and that is unrelated to any of

the Defendants.  (See Knapp Aff., ¶¶ 4-7 and Exs. 2-6).  Ms. Griffin did <u>not</u> make the reservation

at issue on any interactive Rio website.[8]  Likewise irrelevant to the inquiry regarding personal

jurisdiction is the fact that Mr. Calkins may have seen a program on the Rio on the cable television

Discovery Channel (See Calkins Aff., ¶¶ 10, 11).  The Discovery Channel is not related to the

Defendants either. (See Knapp Aff., ¶ 3, and Ex. 1).  In short, the Plaintiffs cannot establish the

required nexus between their claims and any contact between the Rio Defendants and

Massachusetts.

Accordingly, the Plaintiffs have failed to satisfy, and cannot satisfy, the requirements of

Mass. Gen. L. c. 223A, § 3(a), and the Court should dismiss the Amended Complaint as against all

the Defendants.

> 2.  Moreover, Exercise Of Personal Jurisdiction Over The Defendants Would Not Satisfy Due Process Requirements.

The Due Process Clause of the United States Constitution requires that there be sufficient

minimum contacts between the defendant and the forum such that the exercise of personal

jurisdiction over a defendant comports with "traditional notions of fair play and substantial

justice." <u>Brookfield Mach., Inc. v. Calbrit Design</u>, 929 F. Supp. 491 (D. Mass. 1996)(citing

---

[7]  The fact that the Plaintiffs allegedly may have made reservations at the Rio in the year 2000 using a Rio website is irrelevant.  Any such reservation did not have the required nexus with the claims of injury in 2002 alleged by the Plaintiffs.

[8]  Quite distinguishable are the two cases that the Plaintiffs heavily relied upon in *Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint* (Dkt. No.9), <u>Sigros v. Walt Disney World, Co.</u>, 129 F. Supp. 2d 56 (D. Mass. 2001 and <u>Rooney v. Walt Disney World Co.</u>, 2003 U.S. Dist. LEXIS 22226.  Neither of those cases involves a reservation made by a third-party, on an unrelated third-party website, not directly in response to any advertising placed by the alleged defendant – as it was in this case.

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Such sufficient "minimum

contacts" are not present here.

The First Circuit employs a three-part test to determine whether sufficient contacts exist:

(1)    The claim underlying the litigation must directly rise out of, or relate to, the defendant's in-forum activity;

(2)    The defendant's in-state contacts must represent a purposeful availment of the privileges of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and

(3)    The exercise of jurisdiction must, in light of certain "gestalt" factors, be reasonable.

Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995); Cambridge Literary Properties, Ltd. v. W.

Goebel Porzellanfabrik G.m.b.H & Co., 295 F.3d 59, 63 (1st Cir. 2002).

a.    The Plaintiffs' claims fail the "relatedness" test, the first step of the inquiry.

To satisfy the "relatedness" requirement, "the action must directly arise out of the specific

contacts between the defendant and the forum state". Sawtelle, 70 F.3d at 1389. The defendant's

in-state conduct must form an important or material element of proof in the plaintiff's case.

Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999)(citing

Marino v. Hyatt Corp., 793 F. 2d 427, 430 (1st Cir. 1986)). There must be a causal nexus between

the defendant's Massachusetts contacts and the plaintiffs' claim or cause of action. Cambridge

Literary Properties, 295 F.3d at 64.

> "[I]n deciding whether specific [personal] jurisdiction exists, the legal theory advanced is important primarily to tell us what alleged *conduct* matters to the case in hand. The basis for specific jurisdiction is that a defendant's Massachusetts contacts not only exist but are sufficiently related to the events that make up the case."

Id. "[D]ue process demands something like a 'proximate cause' nexus . . .". Id. at 65. Contacts

that do not relate to the Plaintiffs' claims do not help the Plaintiffs satisfy their burden to prove the

relatedness element of the jurisdictional inquiry. Sawtelle, 70 F.3d at 1389. The few

Massachusetts contacts alleged by the Plaintiffs have no causal nexus to the alleged injury and conduct that form the basis of the Plaintiffs' claims (see, Amended Complaint, passim), and thus do not support the exercise of personal jurisdiction over the Defendants.

At bottom, the plaintiffs' Amended Complaint is one of negligence. To prevail on their negligence claim, the Plaintiffs must prove that: (1) the defendant owed Mr. Calkins a duty of care; (2) the defendant breached that duty of care; (3) the breach was the actual cause of plaintiff's injury; (4) the breach was the proximate cause of Mr. Calkin's injury; and (5) Mr. Calkins' suffered damages. Kusmirek v. MGM Grand Hotel, Inc., 73 F.Supp.2d 1222, 1224 (D. Nev. 1999)(citing Perez v. Las Vegas Medical Center, 107 Nev. 1, 4, 805 P.2d 589 (1991)). None of the Massachusetts contacts alleged in the Amended Complaint as relevant to the jurisdictional inquiry are material to the elements that the Plaintiffs must prove to prevail on their negligence claim. Accordingly, those contacts are irrelevant to the personal jurisdiction inquiry. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996)(hotel's solicitation in Massachusetts not proximate cause of decedent's death at hotel in Hong Kong); Degasse v. Plant Hotel, N.V. 13 F. Supp.2d 211, 217-218 (D.N.H 2000)(television advertisements, receiving and confirming reservation via a toll-free telephone number and confirmation of reservation mailed to New Hampshire were not legal [proximate] causes of personal injuries at Aruba hotel); Figueroa Colon v. Radisson Cable Beach Resort, 310 F.Supp.2d 437, 439 (D.P.R. 2004)(no causal connection between personal injury at Bahamas hotel and defendant's alleged contacts with Puerto Rico, to wit, a website that provided plaintiff with hotel promotions, prices and packages and hotel activities, and use of travel agent in Puerto Rico to make reservations); Rodriguez v. Circus Circus Casinos. Inc., 2001 WL 21244, *3 (S.D.N.Y. 2001)(making hotel reservation over website had no nexus to plaintiff's alleged personal injury from fall at Nevada casino; no personal jurisdiction over defendant).

9

The other counts in the Amended Complaint fare no better. The Defendants' alleged contacts with Massachusetts are not related to elements of those claims either.    First, with respect to the Plaintiffs' claims for "Negligent Hiring, Training, Supervision and/or Retention", the alleged negligent act in this case is that an employee moved a chair that Mr. Calkins had been sitting in before Mr. Calkins stood up to make a bet at the roulette table.  Under Nevada law, "[a]n employer has a duty to use reasonable care in the hiring, supervision and retention of an employee" and, in the case of negligent hiring, to conduct a reasonable background check on  a potential employee to ensure that the employee is fit for the position. Doe A. v. Green, 298 F. Supp. 2d 1025, 1039 ( D. Nev. 2004).  None of the contacts with Massachusetts that the Plaintiffs have alleged in this case relate in any way to the elements of such a claim.

Plaintiffs' claims for Vicarious Liability or Respondeat Superior similarly have no connection to the alleged contacts between the alleged Defendants and Massachusetts.  Those doctrines concern the relationship between an employee and employer.  To prevail on such a claim, the Plaintiffs in this case must prove (1) that the person who allegedly moved the chair was an employee of each defendant and under the respective defendant's control, and (2) that the action complained of occurred within the scope of that person's employment.  E.g. Rockwell v. Sun Harbor Budget Suites, 112 Nev. 1217, 1223, 925 P. 2d 1175, 1179 (1996).  None of the elements of such a claim relate to the alleged contacts between any defendant and Massachusetts.

Finally, to prevail on her claim for loss of consortium, plaintiff Christine Calkins must prove that she has deprived of her husband's love, companionship, affection, society, sexual relations and solace. General Electric v. Bush, 88 Nev. 360, 298 P. 2d 366 (Nev. 1972).   The alleged contacts between the Defendants and Massachusetts have no nexus to the elements of that cause of action either.

In sum, since the Massachusetts contacts alleged by the Plaintiffs, to support their allegation of jurisdiction, are entirely unrelated to the Plaintiffs' causes of action, the Plaintiffs cannot satisfy the "relatedness" requirement in the minimum contacts analysis. The Amended Complaint therefore should be dismissed for lack of personal jurisdiction.

2.   The Plaintiffs cannot satisfy the second part of the "sufficient contacts" test -- purposeful availment – either.

The function of the purposeful availment requirement is to ensure that personal jurisdiction is not premised solely upon the defendant's "random, isolated, or fortuitous" contacts with the forum state. Sawtelle, 70 F.3d at 1391. The purposeful availment analysis focuses on two concepts: voluntariness and foreseeability. Id.

Addressing first the "voluntariness" requirement, even if the Court credits the Plaintiffs' jurisdictional allegations (see Amended Complaint ¶ 10), nothing about the Defendants' alleged contacts with Massachusetts leads to the conclusion that any alleged defendant purposefully availed itself of the benefits and protections of Massachusetts law. The services promoted (a hotel room) were outside of Massachusetts, and the alleged Massachusetts contacts are de minimus. See Sawtelle, 70 F.3d at 1391 ("gravely doubtful" that defendant attorneys purposefully availed themselves of benefits and protection of New Hampshire's law by providing legal services outside of New Hampshire). See also, Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987)(no jurisdiction in South Dakota over New York law firm even though law firm made numerous phone calls and mailings to former client located in South Dakota and conducted three day fact-finding mission in South Dakota relative to Maryland litigation); Phillips Exeter Academy, 196 F.3d at 289 (no protection of New Hampshire law rendered to defendant where defendant's contact with New Hampshire was mere payments to school located in New Hampshire).

Furthermore, even crediting the Plaintiffs' allegation -- made "upon information and belief"-- that they were "enticed" to stay at the Rio in 2000 through the Internet, that "enticement" has no significant connection with the fact that in the year 2002, a friend of the Plaintiffs may have made a reservation at the Rio for the Plaintiffs using a website unrelated to the Defendants. The Plaintiffs' activities in making reservations in the year 2000 has no nexus to the alleged injury at the Rio in Nevada in 2002. See, Sheridan v. Ascutney Mountain Resort Services, Inc., 925 F. Supp. 872, 878 (D. Mass. 1996)(dismissing complaint for lack of personal jurisdiction where plaintiff's prior familiarity with Vermont ski resort negates contention that plaintiff was in Vermont because of resort's solicitation of business in Massachusetts).

The "foreseebility" requirement likewise is not satisfied here. The Defendants' alleged contacts with Massachusetts did not make being haled into the Massachusetts courts to defend this case foreseeable. At most, the Plaintiffs allege that the Rio Defendants provide a website on which people worldwide can make reservations at the Rio using the Internet. Nothing about that ubiquitous type of Internet capability suggests that a defendant might foresee being required to appear in the courts worldwide to defend against a lawsuit arising from a fall in Nevada. See Massachusetts School of Law v. American Bar Association, 142 F.3d 26, 36-37 (1st Cir. 1998)(where defendant's contacts consisted of a telephone conversation, mailing a memorandum and a meeting in Boston of limited relevance, defendant could not have foreseen being haled into Massachusetts court to answer allegations of conspiracy).

As the Defendants' alleged contacts with Massachusetts were neither a voluntary acceptance of the benefits and protections of Massachusetts law, nor the kind of activity that made being haled into the Massachusetts courts reasonably foreseeable, the Plaintiffs have not satisfied the "purposeful availment" requirement either.

3.   Consideration of the "gestalt" factors does not save the Plaintiffs.

The "gestalt" factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs' interest in obtaining convenient relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.  Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).  In conducting minimum contacts analysis, courts consider this "'panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal'".  Id., quoting United Electrical Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1988 (1st. Cir. 1992).  "The gestalt factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance."  Id.

As the discussion above shows, this is not a close case – neither the "relatedness" nor "purposeful availment" requirements are satisfied.  Accordingly, the gestalt factors are of less significance in the Court's analysis.  Even if it were a "close case," consideration of the "gestalt" factors still would not tip the scale in favor of exercising personal jurisdiction over the Defendants.

The first factor -- the burden of appearing in a foreign forum --is a wash.  Although the burden of appearing in Massachusetts would be substantial for the Defendants, the Plaintiffs would bear a similar burden appearing in Nevada.

The second factor – Massachusetts' interest in adjudicating this lawsuit – weighs in favor of the Defendants because Massachusetts has limited interest in this dispute.  The subject of the dispute is an alleged fall that occurred in Las Vegas, Nevada.  Although Massachusetts generally may wish to provide a forum for its citizens, a more appropriate forum exists in Nevada.

13

Third, although the Plaintiffs have chosen Massachusetts as their forum, it is not the most convenient venue in which to try the case. (See Part III, infra.) The Defendants, third-party witnesses, site of the incident, and documents and other materials most relevant to the issue of liability are all in Nevada.

Finally, the fourth and fifth factors (the interest of the judicial system and the common interest of all sovereigns) weigh in favor of the Defendants because the interest of the judicial system and public policy are best served by adjudicating disputes in the forum where the alleged activity occurred. In this case, all the relevant activity occurred in Nevada.

Accordingly, the Plaintiffs' claims fail the "minimum contacts" test. Requiring the Defendants to litigate in Massachusetts would violate notions of fair play and substantial justice. This Court should dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2).

**III.    Venue More Properly Lies in the District of Nevada, and the Court Should Dismiss This Case on Grounds of Forum Non Conveniens.**

In addition, the Court should also dismiss the case, pursuant to Fed. R. Civ. P. 12(b)(3), under the doctrine of forum non conveniens. Dismissal of a case on the grounds of forum non conveniens is appropriate where (1) an adequate alternative forum exists, and (2) considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum Iragorri v. Internat'l Elevator, Inc., 203 F.3d 8, 12 (1st. Cir. 2000). Both of those requirements are satisfied here.

First, "[c]ourts generally deem the first requirement satisfied if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and the defendant is amenable to service of process there." Id. It is beyond dispute that the Nevada state and federal courts provide an adequate alternative forum for the Plaintiffs. In addition, the proper

defendant here is amenable to service of process in Nevada. Accordingly, the courts in Nevada provide an adequate alternative forum for the Plaintiffs.

Second, considerations of convenience and judicial efficiency strongly favor litigating the claim in Nevada, for "the compendium of factors relevant to the private and public interests implicated by the case strongly favor dismissal." See Iragorri, 203 F. 3d at 12. The factors relevant to the litigants' private interests include: the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, and the possibility of viewing the premises where appropriate to the action. Id. Evaluating private interests also requires the Court to consider all other practical problems that make a trial easy, expeditious and inexpensive. Id. "Factors relevant to the public interest include such things as the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." Id., quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947).

Applying those factors to the case at hand, it is quite clear that consideration of those private and public interests strongly favors dismissal of the plaintiffs' Amended Complaint on grounds of forum non conveniens. The private interest factors all favor litigating the case in Nevada. The alleged incident, Mr. Calkins' fall, occurred in Nevada. A viewing of the layout of the area where the fall occurred will be part of the case. Other than Mr. Calkins[9], the percipient witnesses to the incident appear to all be residents of Nevada, for example, the employees of the Rio, the paramedic who happened to be at the Rio at the time of the incident, and the physician who first treated Mr. Calkins. (See, Amended Complaint, ¶¶ 11-16.). None of those witnesses

---

[9]  It does not appear that Mrs. Calkins was present at the time of the incident. (See Amended Complaint, ¶¶ 11-12).

will be amenable to service of process in Massachusetts. A number of them are not even employees of the Rio. The cost of either bringing all of those witnesses to Massachusetts (assuming that they would be willing to come here) would be extremely high, and far outweigh the cost of the Plaintiffs traveling to Nevada. The fact that plaintiff Timothy Calkins may have received medical care in Massachusetts does not tip the scale in favor of Massachusetts.

Consideration of the public interest factors similarly weighs in favor of dismissing the case. This is not a controversy local to Massachusetts. It arises from a fall at a casino in Las Vegas, Nevada. To the extent that there could be any interest among the general citizenry in the outcome of the case, they would be persons in Nevada. There is simply no reason why the courts of Massachusetts and the citizens of Massachusetts who are potential jurors at trial, should be burdened with the task of deciding the Plaintiffs' claims.

In sum, this is a dispute that belongs in the courts of Nevada, and this Court should dismiss the case on the grounds of forum non conveniens.

## IV.    The Plaintiffs Have Failed to Allege a Claim of Negligent Hiring, Training, Supervision or Retention

The Plaintiffs have not alleged facts sufficient to support a claim for negligent hiring, training, supervision or retention. (See Amended Complaint, passim). This is not a case where an intentional tort is alleged. Clearly, a background check would not reveal whether or not an employee might someday move a chair that someone had stood up from. See Doe A, 298 F. Supp. 2d at 1040 (entering judgment in favor of defendant where no evidence that defendant would have uncovered prior conduct indicating employee was unfit for position). Accordingly, this Court should dismiss Plaintiffs' claims for negligent hiring, training, supervision or retention, pursuant to Fed. R. Civ. P. 12 (b)(6).

16

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Court should grant the *Motion to Dismiss Plaintiffs' Amended Complaint*, and should dismiss the plaintiffs' Amended Complaint, with prejudice, and award the Defendants their costs and expenses, including attorneys' fees, incurred in connection with preparing and filing this Motion to Dismiss.

DEFENDANTS

By their attorneys,

__/s/ Ann Pauly_____
Ann Pauly (BBO #546197)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110
(617) 542-9900

Dated: November 1, 2004

Certificate of Service

I, Ann Pauly, hereby certify that, on November 1, 2004, I caused a true copy of the foregoing to be served by U.S. Mail upon counsel for the plaintiffs.

/s/ Ann Pauly
Ann Pauly