UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TIMOTHY W. CALKINS and ) | |
| CHRISTINE A. CALKINS, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 04-12044-GAO |
| ) | |
| v. ) | |
| ) | |
| HARRAH'S ENTERTAINMENT, INC., ) | |
| HARRAH'S OPERATING COMPANY, ) | |
| INC., RIO PROPERTIES, INC., RIO ) | |
| HOTEL & CASINO, INC. d/b/a RIO ) | |
| ALL-SUITE HOTEL & CASINO and the ) | |
| RIO, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**INTRODUCTION**

This personal injury action arises out of the defendants' negligence in the maintenance of their casino premises, and in the hiring, supervision and/or retention of one of their employees. See Amended Complaint, attached as Exhibit 1.

On October 4, 2004, the defendants filed a Motion to Dismiss challenging the propriety of the Court's personal jurisdiction over them as well as under the doctrine of forum non conveniens. That Motion and plaintiffs' Opposition are presently pending before the Court. (Many of the arguments raised in this second Motion to Dismiss filed by the defendants are identical to those raised in the defendants' first Motion to Dismiss.) Subsequently, on October 18, 2004, the plaintiffs filed an Amended Complaint, which the defendants now move to dismiss.

Plaintiffs oppose this Motion on the basis that the Plaintiffs' claims arise from the defendants' successful solicitation of these Massachusetts residents through on-line advertising, maintenance of an interactive website, acceptance of a room reservation and payment, and personal solicitation of the plaintiffs through promotional mailings to their home. These actions render the defendants subject to the Court's jurisdiction under M. G. L. c.223A, § 3, the Massachusetts long-arm statute. Furthermore, the defendants' voluntary solicitation of customers in Massachusetts, including the plaintiffs, made it reasonably foreseeable that they would be haled into Court in Massachusetts consistent with constitutional principles of due process and traditional notions of fair play and substantial justice. Moreover, the defendants have not proven that the plaintiffs' chosen forum of Massachusetts is so inconvenient that it would be unfair to conduct the litigation therein. For these and other reasons more fully detailed below, the defendants' second attempt to dismiss this case and avoid defending this action in Massachusetts has no merit and should their Motion should be denied.

## FACTS

The plaintiffs Timothy and Christine Calkins first went to the Rio All-Suite Hotel & Casino in Las Vegas, Nevada (hereinafter "the Rio") for a vacation in August of 2000. Calkins Affidavit, ¶ 2, attached as Exhibit 2. Mr. Calkins selected the Rio after he had researched the hotel and the casino and discovered its advertisements on its website. Calkins Affidavit, ¶ 2. He then made reservations on-line through the Rio's interactive website from his home in Brewster, Massachusetts. When they returned from their vacation in 2000, and through the next year 2001, the Calkins received frequent mailings at their home from the Rio/Harrah's, which included promotional and marketing letters and brochures. Calkins Affidavit, ¶ 3. The purpose of the promotional materials was to entice the plaintiffs to return to the Rio through offers of room

2

discounts and notifications of upcoming special events. As a result, Timothy and Christine

Calkins considered returning to the Rio in the summer of 2002, but felt they could not afford it at

that time. Calkins Affidavit, ¶ 3-4. A friend of the Calkins', Nancy Griffin, who was living with

them, heard their conversation about wishing to return to the Rio. As a result, she arranged

reservations for them for August 13 – 20, 2002 as a surprise gift. Ms. Griffin booked the

reservations on-line through a site that led to the Rio's interactive website. Calkins Affidavit, ¶

5-6. Ms. Griffin subsequently received an e-mail from the Rio confirming the reservations.

Calkins Affidavit, ¶ 6, Exhibit A to same.

On August 14, 2002, Timothy Calkins was playing Roulette at the Rio's Casino. He

stood up from his chair and leaned forward to place a bet. Thereafter, without his knowledge, an

employee of the Rio walked behind him and removed Plaintiff's chair. Mr. Calkins, who was

unaware that his chair had been moved, went to sit down and instead lost his balance and fell

backward. Mr. Calkins hit his head and neck on a Roulette table behind him, and fell to the

floor. He suffered two gashes in the back of his head, bled profusely and immediately felt severe

head and neck pain. Amended Complaint, ¶ 11. Mr. Calkins' injury was recorded by the Rio

video surveillance camera on a video tape. Amended Complaint, ¶ 15-16.

During the time period shortly after the accident, Mr. Calkins experienced severe

headaches and pain as well as persistent tingling in his left hand. For six to eight months after

the accident, he suffered cognitive defects, which included short-term memory loss and

difficultly concentrating. Amended Complaint, ¶ 20. Eventually, Mr. Calkins underwent MRI

studies, which showed evidence of cervical disc bulges that his neurosurgeon concludes resulted

from the head and neck trauma he sustained at the Rio. Amended Complaint, ¶ 19. Despite

physical therapy, Mr. Calkins continues to suffer constant neck and shoulder pain, which is sharp

at times. He also has headaches and tingling in his left arm and hand, which have not abated since the accident. Amended Complaint, ¶ 20.

After the accident and the plaintiffs' return from the Rio, and through 2003, Mr. and Mrs. Calkins continued to receive promotional and marketing materials from the Rio at their home in Brewster, Massachusetts. Calkins Affidavit, ¶ 3, Exhibit B to same. In addition, while watching television in his home, Mr. Calkins recently viewed a one-hour long segment on the Discovery Channel featuring the Rio's hotel and casino in Las Vegas, Nevada. Calkins Affidavit, ¶ 11; E-mail confirmation of program from Discovery Channel, attached as Exhibit 3.

## ARGUMENT

### I.    THE PLAINTIFFS COMPLETED SERVICE OF PROCESS ON THE NEWLY ADDED DEFENDANTS ON THURSDAY, NOVEMBER 4, 2004.

Service of the Amended Complaint was completed on each of the four defendants (all of whom have the same agent for service of process) by the Carson City Sheriff's Office on November 2, 2004. (See Proofs of Service, attached as Exhibit 4.) Therefore, the defendants' argument is moot.

### II.    THE FACTS ALLEGED BY THE PLAINTIFFS ARE CONSISTENT WITH THE RECORD AND SIGNIFICANT TO THE ANALYSIS OF PERSONAL JURISDICTION.

The defendants selectively quote from the plaintiffs' Amended Complaint to suggest contradiction in the plaintiffs' assertions where none exist. The Amended Complaint states that Mr. and Mrs. Calkins were "initially" enticed to stay at the Rio through the internet, where the Rio advertised its resort and casino. At that time, their reservations were made and confirmed through the Rio's interactive web site from Massachusetts. This is consistent with Mr. Calkins' Affidavit. Furthermore, the fact that the reservations were made through an independent website www.i4vegas.com is not inconsistent with the plaintiffs' allegations. The plaintiffs never alleged

that they made their reservations through www.boston.com – only that this site confirms that the defendants' advertising targets Massachusetts residents and, therefore, the defendants have purposefully availed themselves of the privilege of conducting business in the Commonwealth. See Nowak v. Tak How Investments, Ltd., 94 F.3d. 708, 716 (1996). Furthermore, the defendants' use of the www.i4vegas.com site as an authorized conduit for making on-line reservations is not unlike an out-of-state resort using a travel agent to make reservations on its behalf, which Courts have found important in confirming purposeful availment and the reasonable foreseeability of being haled into court in Massachusetts. See Morse v. Walt Disney World Co., 675 F. Supp. 42, 43 (1987).

## III.   THE PLAINTIFFS HAVE PERSONAL JURISDICTION OVER ALL OF THE DEFENDANTS.

### A.   Jurisdictional Principles.

This court has personal jurisdiction over the defendants because the plaintiffs' claims satisfy the two-fold requirements: (1) the claims arise out of the defendants' contacts with the forum state pursuant to provisions of the Massachusetts long-arm statute, G. L. c. 223A; and (2) the exercise of *in personam* jurisdiction in this case is consistent with constitutional notions of due process. See Foster-Miller, Inc. v. Babock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995); Pritzker v. Yari, 42 F.3d 53 (1st Cir. 1984). Where as here, the subject matter jurisdiction is based upon diversity of citizenship, the law of the forum, Massachusetts, is applied to determine whether personal jurisdiction exists. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).

### B.   Standard of Proof.

In determining a motion to dismiss for want of personal jurisdiction, the district court considers only whether the plaintiff has proffered evidence that if credited is sufficient "to

support findings of all facts essential to personal jurisdiction." Rooney v. Walt Disney World

Co., 2003 U.S. Dist. LEXIS 22226; Nowak v. Tak How Inv. Ltd., 899 F. Supp. 25, 27 (D. Mass.

1995), aff'd, 94 F.3d 708 (1st Cir. 1996). The Court will "take facts affirmatively alleged by

plaintiff as true and construe disputed facts in the light most hospitable to plaintiff."

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Where, as here,

material facts are not in dispute and affidavits are not incredible, the plaintiffs need only make a

prima facie showing in order to prevail. Nowak, 94 F.3d at 712.

**C.    Personal Jurisdiction is Appropriate Under the Massachusetts Long-Arm Statute.**

Section 3(a) of the Massachusetts long-arm statute provides, in pertinent part, that a

Massachusetts court may exercise personal jurisdiction: "over a person, who acts directly or by

an agent, as to a cause of action in law or equity arising from the person's...transacting any

business in this commonwealth." M.G.L. c. 223A, § 3(a). Thus, there are two requirements in

order to establish jurisdiction under M.G.L. c. 223A, § 3(a): (1) that the defendant have

transacted business in Massachusetts; and (2) that the plaintiff's claim have arisen from the

transaction of such business. Nowak, 94 F. 3d at 712, citing Tatro v. Manor Care, Inc., 416

Mass. 763, 767 (1994).

At the outset, it is important to note that the defendants fail to cite a single case to support

their arguments that the plaintiffs have not established jurisdiction under the Massachusetts long-

arm statute. Regardless, the defendants' arguments fall prostrate before established case law.

### *1.   The Rio Defendants Transact Business in Massachusetts.*

In determining whether a defendant has engaged in activities amounting to the transaction

of business in Massachusetts, the "transacting business" clause of § 3(a) is broadly construed.

Morse, 675 F. Supp. at 43 ("The language 'transacting any business' is to be construed broadly,

and reaches any purposeful acts, whether personal, private, or commercial.").  Courts assess a

defendant's individual transaction with a Massachusetts resident in light of the defendant's

solicitation of business from the Commonwealth.  Id.  When a minor transaction is part of "a

larger systematic effort to obtain business from Massachusetts businesses and residents," a

foreign defendant has transacted business under § 3(a).  Sigros v. Walt Disney World, Co., 129

F. Supp. 2d 56, 63 (D. Mass. 2001), citing Tatro, 416 Mass. at 769.   The Massachusetts

Supreme Judicial Court ("SJC") in Tatro has explained:

> [A]lthough an isolated (and minor) transaction with a Massachusetts resident may be
> insufficient, generally the purposeful and successful solicitation of business from
> residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this
> requirement.  Tatro, 416 Mass. at 767.

In Tatro, a defendant non-resident hotel accepted a reservation from a Massachusetts

resident by telephone.  The SJC found that this constituted transacting business under the long-

arm statute because that contact was part of a broader attempt to solicit business from

Massachusetts.  416 Mass. at 768-69.

In cases regarding non-resident hotels, Massachusetts District courts have found that a

hotel's acceptance of reservations and payments, correspondence with plaintiffs and the mailing

of promotional materials, in the context of solicitation of forum-resident's business, constitute

the transaction of business pursuant to § 3(a).  See Morse, 675 F. Supp. at 44 (holding that

Disney had transacted business in Massachusetts by sending information to travel agents in

Massachusetts, accepting reservations and payments from the plaintiff in Massachusetts, sending

correspondence such as billing invoices, written confirmations and promotional literature to the

plaintiff's home in Massachusetts.).

In Rooney, the plaintiff, a Massachusetts resident, was injured by an employee of the

"BoardWalk Inn and Villas Resort" in Florida.  The District Court had "no difficulty" finding

7

that the defendant's solicitation of business from the plaintiffs, which included advertising and mailing a promotional video to the plaintiffs in Massachusetts and booking their vacation over the telephone, satisfied the requirements of the long-arm statute. 2003 U.S. Dist. LEXIS 22226 at 6.

In Sigros, the plaintiffs (mother and daughter) sued Walt Disney in the District Court of Massachusetts for personal injuries the daughter sustained at the Disney resort in Florida. 129 F. Supp. 2d at 57. The Sigros plaintiffs alleged that relatively isolated contacts between the parties, including telephone calls and mailings, occurred against a backdrop of Disney's solicitation of Massachusetts residents, including advertisements for Walt Disney's World, the Magic Kingdom, Epcot Center and/or MGM Studios. Id. at 64. The Court found that the mother's phone call to the Disney 800 number and the various mailings between Disney and the mother were sufficient to establish that Disney had been transacting business for purposes of § 3(a) . The Court rejected Disney's arguments that its advertising in Massachusetts could not support personal jurisdiction because it was part of a national or regional advertising campaign and was not aimed at a narrowly defined market. Id. at 65. Instead, the Court held that **"any advertising** activity by Disney and/or WDA in Massachusetts merely supplements the more specific contacts between Disney/WDA and Sophie, which this Court has found sufficient to establish personal jurisdiction." Id. (Emphasis added.)

In the instant case, the Rio clearly engaged in the purposeful and successful solicitation of business from residents of the Commonwealth including the plaintiffs. The Rio mailed promotional literature about the hotel and the casino directly to the plaintiffs' home for approximately one year following their first visit. Calkins Affidavit ¶ 4. This had the hoped for effect that they would return to the Rio and use its casino, where Mr. Calkins was injured. In

8

addition, the Rio accepted reservations through its interactive website and confirmed the

reservation through e-mail. Calkins Affidavit ¶ 6, Exhibit A to same. In addition, the Rio has

advertised itself through the internet, which is how the plaintiffs discovered and were attracted to

the Rio and its casino. See Tatro, 416 Mass. At 767. Nevertheless, any advertising that the Rio

may have done during this time merely supplements the specific and direct contacts the Rio had

with the plaintiffs, which impose jurisdiction under the long-arm statute. Indeed, in Nowak, the

Court found personal jurisdiction under the long-arm statute absent evidence of advertising by

the Hong Kong hotel in Massachusetts outside of its direct solicitations of the plaintiffs'

employer. Nowak, 899 F. Supp. at 31.

Therefore, the plaintiffs have alleged contacts that fall squarely within the Court's

definition of "transacting business" pursuant to § 3(a). See Sigros, 129 F. Supp. 2d at 65; Morse,

675 F. Supp. 2d at 43; Tatro, 416 Mass. at 767.

### 2. The Harrah's Defendants Transacted Business in Massachusetts.

The defendants' argument that the plaintiffs cannot show that the Harrah's defendants

"transacted business" in Massachusetts is feckless. The plaintiffs have conducted significant

investigation thus far to confirm that personal jurisdiction is proper over both Harrah's

Entertainment, Inc. (HEI) and Harrah's Operating Company, Inc. (HOC).

The analysis is similar to that conducted by the District Court of Massachusetts in Sigros.

In Sigros, the plaintiffs sued Walt Disney World Co. ("Disney") and Walt Disney World

Hospitality & Recreation Corporation ("HRC") in the District Court of Massachusetts for

personal injuries the daughter sustained at the Disney resort called "Caribbean Beach" or

"Captain's Tavern" in Florida. 129 F. Supp. 2d at 57. Both Disney and HRC were incorporated

in Florida and had their principal places of business in Florida. Disney owned, operated, or

9

maintained the "Caribbean Beach" resort and the "Captain's Tavern" located in Florida. Neither

Disney nor HRC were qualified or registered to do business in Massachusetts or had any office,

employees, agents, telephone listings, mailing addresses, or bank accounts in Massachusetts. No

travel agent located in Massachusetts was an agent of, or had authority to act on behalf of,

Disney or HRC.

The Court found that jurisdiction was proper over Disney under the Massachusetts long-

arm statute although the plaintiffs never had any direct contact with Disney. Instead, they had

contact with "Walt Disney Attractions, Inc." (WDA) a separate legal entity from Disney that

operated the 800 number the plaintiffs called. (Of note, WDA was not a defendant in the case.)

The Court stated:

> Despite the separate legal status of Disney and WDA, this Court is not persuaded that
> Disney should be permitted to hide behind such a transparent corporate shield for the
> purpose of avoiding personal jurisdiction in Massachusetts. The SJC has stated that
> affiliated corporations can be presumed to function as agents of one another when "there
> is a confused intermingling of activity of two or more corporations engaged in a common
> enterprise with substantial disregard of the separate nature of the corporate entities, or
> serious ambiguity about the manner and capacity in which the various corporations and
> their respective representatives are acting." Id. at 64 citing My Bread Baking Co. v.
> Cumberland Farms, Inc., 353 Mass. 614, 619 (1968).

> [T]he organizational structures of Disney and WDA appear to be intermingled, if not
> interlocking. More importantly, there is evidence of a "confused intermingling" between
> the activities of WDA and Disney. At the very least, WDA takes reservations for hotel
> rooms owned and operated by Disney and mails out confirmations of those reservations.
> Disney's use of WDA to bring in business entwines the two corporations in a "common
> enterprise" such that it would be unreasonable to expect the average consumer to realize
> that WDA, not Disney, accepts reservations for Disney-owned resorts. Id.

The Court also found that a satisfaction survey mailed to the plaintiff in Massachusetts

several months after the accident further supported the conclusion that the activities of Disney

and WDA were intermingled. The letter requesting the plaintiff's participation in the survey was

printed on Disney stationary and was mailed in an envelope naming Disney on the return

address. The Court concluded that "separate mailings from Disney and WDA regarding the same trip to Caribbean Beach were understandably confusing to the plaintiffs and sufficient to establish 'serious ambiguity about the manner and capacity' in which those two corporations were acting. Although mailed after Johanna's accident, the survey letter constitutes a direct contact between <u>Disney</u> and a Massachusetts resident." <u>Id.</u> at 64.

Furthermore, although HRC never owned, operated, or maintained Caribbean Beach or Captain's Tavern, the Court found that jurisdiction over HRC would lie "if the activities of HRC are confusingly intermingled with those of Disney so as to warrant imputing the established contacts between Disney/WDA and Massachusetts to HRC itself." <u>Id.</u> at 70. The Court found that they did not.

In this case, as in <u>Sigros</u>, the Harrahs defendants are not permitted to hide behind the Rio to avoid personal jurisdiction in Massachusetts. First, in this case, unlike in <u>Sigros</u> where HRC did not own or operate the resort where the plaintiff was injured, the evidence shows that HEI *does own or manage the Rio.* It was reported in the Boston Globe that, in August of 1998, HEI "purchased" the Rio. <u>See</u> Boston Globe article, attached as <u>Exhibit 5</u>. More importantly, the Securities and Exchange Commission Form 10-K (obtained through the Rio's website) states that Harrah's Entertainment, Inc. acquired and **. . . owns or manages . . . The Rio All-Suite Hotel & Casino"** in Las Vegas. <u>See</u> Form 10K at p. 4 and 6, attached as <u>Exhibit 6</u>. It also confirms that HEI employees include those at the Rio and lists the Rio as one if its properties. <u>See</u> <u>Exhibit 6</u>, at p. 7 and 8. In addition, Harrah's web page lists the Rio All-Suite Hotel & Casino as one of "Our Casinos." <u>See</u> web page, attached as <u>Exhibit 7</u>. This "Harrah's" web page is also evidence of their advertising and solicitation of business in Massachusetts, which serves as the "backdrop" to the more direct and specific contacts with the plaintiffs that support personal jurisdiction.

Sigros, 129 F. Supp 2d at 65. With regard to HOC, the Form 10K for HOC states that "[HEI's] business is conducted through a wholly-owned subsidiary, Harrah's Operating Company, Inc., which owns or manages various subsidiaries [sic] 25 casinos in the United States." See Exhibit 6 at p. 3. This is evidence of the fact that HOC also owned or managed the Rio in some capacity. At the very least, this information supports the theory that activities of HEI and HOC are "confusingly intermingled" with those of the Rio to warrant imputing established contacts between the Rio and Massachusetts to HIE and HOC. Sigros, 129 F. Supp. 2d at 70.

Second, as in Sigros, there is direct evidence of contact between HEI and the plaintiffs sufficient to establish jurisdiction over HEI. Materials mailed to the plaintiffs' home in Massachusetts months after the accident mention both "Harrah's", the "Rio". Calkins Affidavit, Exhibit B to same. The letter has the "Rio" insignia on top, but has a copyright for "Harrah's Entertainment, Inc." at the bottom. It is and signed by Tom Jenkin, Sr. Vice President and General Manager, Rio All-Suite Hotel & Casino and Harrah's Las Vegas. Calkins Affidavit, Exhibit B to same. It informed Mr. Calkins that he was a member of "Harrah's family". It refers to "Harrah's Las Vegas" as the Rio's "sister property." In addition, the Rio uses Harrah's web site as a conduit for making reservations. As a result, there is substantial evidence of a "common enterprise", if not a "confused intermingling", between the Harrahs defendants and the Rio to create serious ambiguity as to the manner in which they were acting. Under such circumstances, the Harrahs defendants undeniably are subject to personal jurisdiction in Massachusetts.

**D.** **The Plaintiffs' Injuries Arose From the Transaction of Business.**

An injury arises from the transaction of business in the Commonwealth, if "but for" that contact, there would have been no injury. Sigros, 129 F. Supp. 2d. at 65-66. The First Circuit has adopted the Massachusetts Supreme Judicial Court's "but for" standard for determining

when an injury arises from the transaction of business. <u>Sigros</u>, 129 F. Supp. 2d. at 65-66. In <u>Tatro</u>, the SJC held that the resident plaintiff's injuries "arose from" a California hotel's transaction of business in Massachusetts because, but for the hotel's solicitation of her business and agreement to provide her with a hotel room in California, the plaintiff would not have been injured at the hotel. 416 Mass. at 770-72. The SJC concluded that the Massachusetts resident's in-forum act of reserving a room in an out-of-state hotel "is considered the first step in a train of events that results in personal injury." <u>Id.</u> at 770. This District Court applied <u>Tatro</u> in <u>Sigros</u>, and concluded that the plaintiff daughter's injury at Disney clearly "arose from" her mother's act of reserving a room because, "but for" that contact, she would not have been injured. <u>Sigros</u>, 129 F. Supp. 2d at 65-66.

In this case, but for the Rio's solicitation of the plaintiffs, with direct mailings, and the agreement to provide them with a hotel room, and casino offerings, Timothy Calkins would not have been injured. The Rio's e-mail confirmation for the Calkins' reservation and the acceptance of payment for that reservation are concrete steps in the train of events leading to Mr. Calkins' injury. <u>See Sigros,</u> 129 F. Supp. 2d. at 65-66. Accordingly, the plaintiffs' injury clearly arose from the defendants' transaction of business in the Commonwealth pursuant to § 3(a). <u>See Sigros</u>, 129 F. Supp. 2d. at 65-66; <u>Tatro</u>, 416 Mass. at 771-772.

The defendants' argument that the plaintiffs have failed to satisfy the "relatedness" test under the long-arm statute is also without merit. The defendants assert that, because a friend of the plaintiffs – Nancy Griffin – made the reservations on a third-party website based on hearing the plaintiffs' conversations about their desire to return to the Rio, their claims do not relate to the Rio's transaction of business in Massachusetts.

The analysis the defendants impose in the context of a personal injury case was explicitly rejected in Tatro, 416 Mass. at 770. Specifically, the Court rejected the strict interpretation advanced in Marino v. Hyatt Corp., 793 F. 2d 427, 430 (1st Cir. 1986) and Pizzaro V. Hoteles Concorde Int'l, C.A., 907 F.2d 1256, 1258-59 (1st Cir. 1992) that the defendants' conduct must be the "legal or proximate cause" of the plaintiffs' injuries. See Tatro, 416 Mass. at 770.

In Nowak, the District Court of Massachusetts relied on the reasoning in Tatro to conclude that the plaintiff satisfied the relatedness test under the long-arm statute. In Nowak, an Administrative Assistant for the plaintiffs' employer reserved rooms for the plaintiff and his wife at the Holiday Inn Crowne Plaza Hotel in Hong Kong. This Hotel was selected by the plaintiffs' employer due to various benefits the corporation received from the Hotel. Id. at 27. The court concluded that the plaintiff's negligence action arose out of or related to the Hotel's transaction of business within the Commonwealth under both the long-arm statute as interpreted in Tatro as well as the Due Process clause of the Constitution. The Court concluded that the long-arm statute was satisfied where the plaintiffs' claims were "made possible by" and were "in the wake of" the Hotel's successful solicitation of Kiddie's business, and promotional materials that included the pool as an attraction. 899 F. Supp. at 31, citing Tatro, 416 Mass. at 771.

In the instant case, the plaintiffs' second trip to the Rio was "in the wake of" the Rio's advertisements on the internet that first induced them to travel there in August 2000 and the Rio's subsequent mailing of promotional materials to the plaintiffs' home inviting them to return. Regardless of by whom or how these second reservations were made, the plaintiffs' claims were made possible by the Rio's contacts with, and direct solicitations of, the plaintiffs. Under these circumstances, their return to the Rio and use of the casino was by no means remote or unpredictable. Nowak, 899 F. Supp. at 31. The fact that the plaintiffs' friend made the

14

reservation for them is irrelevant for purposes of this analysis. Again, in Nowak, it was the

plaintiff's employer, not the plaintiff, who made the Hong Kong hotel reservation. 899 F. Supp.

at 28. In other words, but for the Rio's advertising and persistent mailings of persuasive and

personal promotional materials and discounts, the plaintiffs would have selected and then

returned to the Rio to use its casino.

Therefore, the plaintiffs have established that this Court has jurisdiction under the

Massachusetts Long Arm statute, M. G. L. c. 223A, § 3(a), because the defendants transacted

business in Massachusetts and the plaintiffs' claims arose from the transaction of such business.

Nowak, 94 F. 3d at 712.

## IV.    PERSONAL JURISDICTION IS PROPER UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.

The due process clause of the United States Constitution requires minimum contacts

between a nonresident defendant and a forum state such that the exercise of personal jurisdiction

over that defendant accords with "traditional notions of fair play and substantial justice."

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In analyzing minimum

contacts, courts have distinguished between two kinds of personal jurisdiction: "general" and

"specific." General jurisdiction exists when the litigation is not directly founded on the

defendant's forum-based contacts, but the defendant has nevertheless engaged in a systematic

activity, unrelated to the suit, in the forum state. United Elec. Workers v. 163 Pleasant St. Corp.,

960 F.2d 1080, 1088 (1st Cir. 1992) ("Pleasant St. I"). Specific jurisdiction, by contrast, narrows

a court's focus to a "specific set of interactions as a basis for personal jurisdiction." Foster-

Miller, Inc., 46 F.3d at 144. If the Court finds that it has specific jurisdiction, it need not address

the question of general jurisdiction. Sigros, 129 F. Supp. 2d. at 66.

The First Circuit utilizes a three-part analysis to determine if sufficient contacts exist to exercise specific personal jurisdiction: (1) the claim underlying the litigation must relate to the defendant's forum-state activities; (2) the defendant's in-state contacts must constitute a purposeful availment of the privilege of conducting activities in that state, thereby invoking the benefits and protections of that state's laws, and making it foreseeable that the defendant could be haled into court in that state; and (3) the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. 163 Pleasant St. Corp., 960 F.2d at 1089; see also Pritzker, 42 F.3d at 60-61.

## A.    The Plaintiffs' Claims Arise Out of, or Relate to, the Defendants' In-Forum Activities.

The first consideration under the tripartite framework is whether the plaintiffs' claims arise out of, or relate to, the Rio's in-forum activities. Sawtelle, 70 F.3d at 1389. The relatedness inquiry is a "flexible, relaxed standard." Sigros, 129 F. Supp. 2d. at 66 citing Pritzker, 42 F.3d at 60-61. In 163 Pleasant St. Corp., the First Circuit explained that at this stage of the analysis it is important to bear in mind the nature of the plaintiff's claim and to consider whether the plaintiff's cause of action can "conceivably be said to have arisen directly from, or been caused proximately by," the defendant's contacts with the forum. 960 F.2d at 1089.

This proximate cause test requires an "arising from" analysis distinct from the "but for" analysis undertaken under the Massachusetts long-arm statute. Nowak, 899 F. Supp. at 30. Contrary to the defendants' assertions, this Court does not apply a rigid proximate cause test. Nowak, 94 F.3d at 715 ("[W]e are persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive."). Instead, the First Circuit applies a "small overlay of 'but for' on 'proximate cause'". Nowak, 94 F.3d at 715-16. In this analysis, the Court

assesses the nexus between the plaintiff's injury and the defendant's activities in the forum state.

Id. The rationale is that:

> [W]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. **If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, the Court finds a strong nexus between the contacts and the cause of action to survive the due process inquiry at least at the relatedness stage.** Nowak, 94 F. 3d. at 715-16 (emphasis supplied).

Applying the relatedness test, the First Circuit in Nowak upheld the district court's finding that the hotel's solicitation of the plaintiffs' business resulting in the reservation of a set of rooms for Kiddie employees and their spouses, set in motion "a chain of reasonably foreseeable events resulting in Mrs. Nowak's death." Id. The Court noted that the hotel had included the pool as an attraction in its promotional materials, and that the possibility that solicitation would be successful and a guest would use the pool was foreseeable. Id. In Nowak, the Court concluded that although the hotel's solicitation was not the proximate cause of Mrs. Nowak's death, it did "represent a meaningful link" to the harm suffered, sufficient to maintain jurisdiction. 94 F.3d. at 716; see also Rooney, 2003 U.S. Dist. LEXIS 22226 at 11.

The facts in this case clearly fall within the First Circuit's standard for relatedness. In 2000 and 2001, the Rio continuously sent promotional materials enticing Mr. Calkins to return and gamble in its casino. These solicitations were the reason the plaintiffs wanted to return to the Rio. Mr. Calkins was injured while gambling in the Rio's casino and, therefore, was harmed "while engaged in activities integral to the relationship the corporation sought to establish." Nowak, 94 F.3d. at 715-16. Even if the solicitations to return and gamble in the casino were not the proximate cause of Mr. Calkins' injury, they represented a "meaningful link" to the harm suffered. In other words, these solicitations set in motion a chain of events that caused Mr.

17

Calkins to return to the Rio for vacation.[1] The nexus between the Rio's contacts and the plaintiffs' cause of action is sufficiently strong to survive the due process inquiry regarding relatedness. See id.

The relevance of the cases on which the defendants rely in this section of their Motion is, if at all, marginal in that none are personal injury cases. Rather, the appropriate line of cases to follow is Nowak, Sigros, and Rooney all of which are analogous to the case at bar and all of which found that Due Process relatedness test was satisfied because of each hotel's solicitations and advertising, which made it "reasonably foreseeable" that the plaintiffs would be induced to make reservations at the respective hotels. Sigros, 129 F. Supp. 2d at 67; Nowak, 899 F. Supp. at 31. As in Rooney, "[t]his precedent, when applied to the facts above, compels the same result". Rooney, 2003 LEXIS 22226 at 9.

In fact, one case cited by the defendants, Cambridge Literary Properties v. Goebel, 295 F.3d 59 (1st Cir. 2002), confirms that an analysis of the relationship between the defendants' in-form activities and each claim is not required, nor invoked, by this Court. As stated in Cambridge, it is irrelevant how the plaintiffs denominate their cause of action:

> "Claim" or "cause of action" usually refers to an abstract legal theory for recovery; but in deciding whether specific jurisdiction exists, the legal theory advanced is important primarily to tell us what alleged conduct matters to the case at hand. The basis for specific jurisdiction is that a defendant's Massachusetts contacts not only exist but are sufficiently related to the events that make up the case. Id. at 64 (emphasis supplied).

In this case, the events that make up the case include Mr. Calkins' injury while gambling at the Rio's Casino; gambling was an activity integral to the relationship the defendants sought to establish through its Massachusetts contacts of advertising and direct and personal solicitations. This is not a case, for example, where the plaintiffs allege breach of contract arising from a

---

[1] The fact that the plaintiffs' friend made the reservations for them also is irrelevant for purposes of this analysis. Again, in Nowak, it was the employer, not the employee or his wife, who had contact with the defendant hotel and made the reservations. See Nowak, 899 F. Supp. at 28.

deposit paid for a hotel reservation that was not kept, or a deposit that the hotel did not return after a promotional event was cancelled. The courts conclude that such extra-forum breach of contract or fiduciary duty type conduct, the "effects" of which are felt by the plaintiffs in-forum, does not establish personal jurisdiction under the due process clause. See Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999); Sawtelle, 70 F.3d at 1390-91.

Furthermore, Sheridan v. Ascutney Mountain Resort Services, 925 F. Supp. 872 (D. Mass. 1996), also referenced by the defendants, is distinguishable on the basis that the plaintiffs in that case had a ten-year ownership of the condominium where the injury occurred prior to the date of injury. Therefore, they failed to establish that "but for" the defendant's solicitation of business in Massachusetts, she would not be injured. In this case, the solicitation by the defendants was not remote. The reason the plaintiffs chose to return to the Rio was due to the many personal solicitations and enticing discounts they received subsequent to their first visit. Calkins Affidavit. These solicitations were a "meaningful link" to their return. Nowak, 94 F.3d at 715-16. In addition, they selected the Rio for their first visit because of the defendants' contacts with Massachusetts through its interactive website. Calkins Affidavit ¶ 2. Compare Christopher v. Mount Snow, 1996 U.S. Dist. LEXIS 14948 (no personal jurisdiction where defendant did not "target" plaintiff, beyond general advertising.)

**B.    The Defendants Have Purposefully Availed Themselves of the Privilege of Conducting Business in Massachusetts.**

The plaintiffs also have satisfied the second element of the constitutional prong of specific personal jurisdiction analysis - the defendant's contacts with the forum state represent a "purposeful availment" of the privilege of conducting business in Massachusetts. Ticketmaster, 26 F.3d at 207. The cornerstones of the "purposeful availment" inquiry are voluntariness and

foreseeability. <u>Id.</u> A defendant's contacts with the forum state must be voluntary, "not based on the unilateral actions of another party or a third person." <u>Nowak</u>, 94 F.3d at 716, citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985). In addition, the defendant's contacts with the forum state must be such that it should reasonably anticipate being haled into court there. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

A defendant's contacts are voluntary when it reaches out to solicit residents of the forum state. <u>See</u> <u>Sigros</u>, 129 F. Supp. 2d at 68 (holding although the plaintiff initiated contact with Disney, through the advertising for its resorts, Disney plainly "reached into Massachusetts with an unprompted solicitation and sought to entice Massachusetts residents to leave the state and visit its...facilities."); <u>Nowak</u>, 899 F. Supp. at 32; <u>see also</u> <u>Mallon v. Walt Disney World Co.</u>, 42 F. Supp. 2d 143, 145 (D. Conn. 1998) (holding that Disney, acting through its agent WDA, "deliberately reached out" to attract Connecticut residents to their resort).

When, a defendant deliberately solicits residents of the forum state, it is foreseeable to that defendant that it will be haled into Court in that state. In <u>Rooney</u>, this District Court explained:

> Here, Disney targeted its advertising campaign at Massachusetts to lure Massachusetts residents to vacation at its resort in Florida.....The result -- Rooney's trip to Florida – was the very result the defendants sought when they directed their advertisements at Massachusetts residents. Their efforts to solicit business from Massachusetts customers "rendered foreseeable the possibility of being haled into a Massachusetts court." 2003 U.S. Dist. LEXIS 22226 at 10.

<u>See also</u> <u>Nowak</u>, 94 F.3d. at 717 (finding possibility of being haled into Massachusetts court foreseeable where defendant solicited Massachusetts corporation for the purpose of bringing employees of that corporation to its hotel in Hong Kong).

In this second stage of constitutional analysis, Massachusetts District Courts have also considered whether a defendant's web-based contacts among other contacts constitute purposeful

availment of the benefits and protections afforded by Massachusetts' laws. <u>Venture Tape Corp.</u> <u>v. McGills Glass Warehouse</u>, 292 F. Supp. 230, 232-233 (D. Mass. 2003); <u>Hasbro, Inc. v. Clue</u> <u>Computing, Inc.</u>, 994 F. Supp. 34, 45 (D. Mass. 1997), aff'd 232 F.3d 1 (1st Cir. 2000); <u>Digital</u> <u>Equipment Corp. v. Alta Vista Tech., Inc.</u>, 960 F. Supp. 456, 470 (D. Mass. 1997). First Circuit District Courts consider the nature and quality of commercial activity conducted on a defendant's website. <u>See</u> <u>Hasbro</u>, 994 F. Supp. at 45. In particular, District Courts assess the level of interactivity of a defendant's website. Where a defendant maintains a so-called "passive" website that simply makes information available to a user, the site is less likely to be among contacts that constitute purposeful availment. <u>See</u> <u>Comer v. Comer</u>, 295 F. Supp. 2d 201, 210 (D. Mass. 2003). But, where a website is "interactive" and permits a user to exchange information with a host computer, it may be among contacts that constitute purposeful availment. <u>See</u> <u>Hasbro</u>, 994 F. Supp. at 45.

In the case at bar, the defendants maintained, and still do maintain, an interactive website that serves as an advertising vehicle for the casino and permits users to make reservations on-line. An interactive website is most likely to constitute "purposeful availment" when a defendant interacts with residents of the forum state via that website, or when the defendant solicits residents of the forum state. <u>Cf.</u> <u>Venture Tape Corp.</u>, 292 F. Supp. at 232-233. Unlike <u>Venture</u> <u>Tape Corp.</u>, where the plaintiff "presented no evidence of sales made to Massachusetts residents, or specific solicitations directed at the Commonwealth," in this case, the plaintiffs' reservations for *both visits* to the Rio were made through the Rio's interactive website. Moreover, Rio's website is linked to a Massachusetts-specific website, http://www.boston.com ("Boston.com"). Boston.com is a website primarily devoted to providing information to the residents of Massachusetts, including news and events in Massachusetts and links to attractions and resorts

its residents may find enticing. The website provides Massachusetts residents with, among other things, access to an entire webpage of information regarding Las Vegas in its "Top Destinations" link, which has a "Related Advertising Link" to the Rio. See Exhibit 8 From this page, a Massachusetts resident can click a button called "Make Reservation." In addition, the plaintiff recently saw a one hour segment on the Rio while watching the Discovery Channel. This segment featured many attractions of the Rio and its casino. Calkins Affidavit, ¶11; Exhibit 3.

Through Rio's interactive website, its internet and television advertising, and its mailings of promotional materials to the Calkins' home in Massachusetts, the defendants purposefully sought to establish contacts with Massachusetts residents including the plaintiffs. See Nowak, 94 F.3d. at 716. The Rio conducted a deliberate and systematic solicitation of business from Massachusetts. In the case of the Calkins, this solicitation had the very result that the defendants sought: the plaintiffs visited the Rio. In this technological age, advertising on a newspaper's website is no different than placing an advertisement in the newspaper itself. Furthermore, by maintaining an interactive website that allows people (such as the plaintiffs) to make reservations directly with the Rio, the Rio has demonstrated a desire and deliberate intent to get Massachusetts residents to use its casino. Finally, the Rio/Harrah's defendants must have contracted directly with The Boston Globe in Massachusetts in order to advertise on this site. Through these actions, the defendants voluntarily availed themselves of the benefits of doing business in Massachusetts and could reasonably anticipate being haled into court in this forum. See Sigros, 129 F. Supp. at 63; Digital Equip. Corp., 960 F. Supp. at 465-66 n.19.

Furthermore, the fact that the Rio was the subject of a one-hour television show on the Discovery Channel is relevant for the purpose of establishing that the Rio voluntarily submitted itself to a nationally telecast promotion of its hotel and casino. As referenced in the summary of

this program received directly from Rhonda Easton, Viewer Relations/Research for the Discovery Channel, the defendants voluntarily opened the Rio doors to the Discovery Channel and assisted their production team in videotaping their hotel and casino. Specifically, Discovery was allowed to "follow the ambassador of good will through the casino" and went "behind the scenes of the Palazzo Suites." The defendants anticipated and, certainly, hoped the Rio would be nationally telecasted. Indeed, this was free advertising, which is as significant to this analysis as if the Rio had purchased a one-hour infomercial.

### C.    Personal Jurisdiction Satisfies the Gestalt Factors.

The third and final stage of the due process analysis affords an opportunity for concepts of reasonableness to illuminate that review. World-Wide Volkswagen Corp., 444 U.S. at 292 (1980). The Supreme Court has identified five such considerations, termed by the First Circuit, "the gestalt factors": 1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. Pleasant St. I, 960 F.2d at 1088, citing Burger King Corp., 471 U.S. at 477.

#### 1.    The Defendants' Burden of Appearance.

Because there is always a burden of appearing in a foreign jurisdiction, for this particular gestalt factor to have any significance, a defendant must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." Nowak, 94 F.3d. at 718, quoting from Pritzker, 42 F.3d at 64. The defendants in Sigros, as the defendants in this case, argued that appearing before this Court would be burdensome because Disney was itself located in Florida, the locus of the accident was in Florida, and numerous indispensable

witnesses, primarily Disney employees, resided in Florida. 129 F. Supp. 2d. at 65. However, the Court concluded that these inconveniences did not constitute unusual or constitutionally significant burdens. Id. Instead, as noted by the District Court in Nowak, they are "but an ancillary cost of doing business within this district." Nowak, 899 F. Supp. at 34. The Sigros Court acknowledged that if in Nowak the burdens faced by a Hong Kong defendant were insufficient to activate this gestalt factor in its favor, then clearly such burdens were even less availing to Disney. Sigros, 129 F. Supp. 2d at 69.

As with Disney and the Hong Kong hotel, the Rio, located in Nevada, will experience *some* burden in defending itself in Massachusetts. However, the First Circuit has recognized that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. Nowak, 94 F.3d at 718. The defendants in the instant case admit they face no burden defending this action in Massachusetts that is greater than plaintiffs' burden. This gestalt factor therefore supports the plaintiffs' argument that it is reasonable to require the defendants to defend themselves in Massachusetts.

### 2. The Forum State's Adjudicatory Interest.

"Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims." Nowak, 94 F.3d at 718. Although Mr. Calkins' injury occurred in Nevada, significant events leading up to that injury took place in Massachusetts thus giving Massachusetts an interest in the instant litigation. By providing an interactive website through which the plaintiffs residing in Massachusetts residents could make on-line reservations and by soliciting the plaintiffs at their Massachusetts residence,

the defendants have provided the forum state with a particularly compelling interest in adjudicating this matter. Accordingly, this factor also weighs in the plaintiffs' favor.

### 3. The Plaintiffs' Convenience.

Courts assessing jurisdictional issues generally accord plaintiffs' choices of forum a degree of deference. Nowak, 94 F.3d at 718. In this case, deference should be accorded to the plaintiffs' choice of Massachusetts. A Massachusetts forum obviously is more convenient for the plaintiffs than a Nevada forum, especially in light of the debilitating pain that Mr. Calkins still suffers. In addition, Mr. Calkins is a self-employed plumber. Trips to Nevada for depositions and trial would prove to be economically, as well as physically, strenuous for him. The plaintiff's treating physician, a critical witness, also resides in Massachusetts. This gestalt factor, therefore, cuts in favor of the plaintiffs.

### 4. The Administration of Justice.

The fourth gestalt factor "focuses on the judicial system's interest in obtaining the most effective resolution of the controversy." Nowak, 94 F.3d at 718. This consideration counsels against splintering a dispute among several different jurisdictions, which would both "contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes." See Pritzker, 42 F.3d. at 64. The purpose of this inquiry is to determine the extent to which a forum may have an adjudicatory interest other than concern for the rights of its domicilaries. See Sawtelle, 70 F.3d. at 1395. This gestalt factor does not favor either the plaintiffs or defendants. See Sawtelle, 70 F.3d. at 1395.

### 5. Pertinent Policy Arguments.

The final gestalt factor requires this Court to consider the interests of the affected forum states in substantive social policies. See Nowak, 94 F.3d at 719. As noted earlier, Massachusetts

has a clear interest in protecting its citizens from foreign providers of goods and services and in affording those citizens a convenient forum in which to bring their claims. Id. As in Nowak, here Massachusetts' interest in protecting its citizens slightly outweighs the interest of an out-of-state hotel protecting its businesses. Id.

On balance, the Gestalt Factors demonstrate that it is fair and reasonable to expect the defendants to defend themselves in Massachusetts where the plaintiffs were solicited to visit the Rio, and where the plaintiffs and the plaintiffs' treating physician reside. The exercise of jurisdiction in Massachusetts over the defendants is consistent with, and certainly does not offend, traditional notions of fair play and substantial justice. Accordingly, this Court should deny the defendants' motion to dismiss for lack of jurisdiction.

## V.    VENUE IN MASSACHUSETTS IS APPROPRIATE.

The doctrine of forum non conveniens grants discretion to this Court to dismiss a case when the chosen forum is so inconvenient that it would be unfair to conduct the litigation therein. See Howe v. Goldcorp Investments, Ltd., 946 F.2d 944, 947 (1st Cir. 1991). The doctrine is to be used to avoid "serious unfairness." Nowak, 94 F.3d. at 719. "Where the plaintiff is a resident of the forum in which an action is brought, a defendant faces an extremely difficult task in persuading a court that an action should be dismissed for forum non conveniens." Thomson Information Services, Inc. v. British Telecommunications, 940 F. Supp. 20, 24 (D. Mass. 1996). The plaintiff's choice of forum will rarely be disturbed. Nowak, 94 F.3d. at 719.

When an alternative forum has jurisdiction to hear a case, the District Court may dismiss a case on grounds of forum non conveniens:

> upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate

because of considerations affecting the court's own administrative or legal problems. Nowak, 94 F.3d. at 720, quoting from Koster v. Lumbermens Mut. Co., 330 U.S. 518.

A party moving for dismissal bears the burden of establishing that (1) there is an adequate alternative forum, and (2) considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum. Mercier v. Sheraton International, Inc., 935 F.2d 419, 423 (1st Cir. 1991).

The U.S. Supreme Court has identified private and public interest factors that guide this District Court in determining whether the balance of convenience and judicial efficiency favors litigating the claim in the alternative forum. A defendant moving to dismiss for forum non conveniens must establish that the private and public interest factors weigh heavily on the side of trial in the alternative forum. Mercier, 935 F.2d at 423. Private interest factors include relative ease of access to sources of proof, availability of compulsory process, comparative costs of trial, and ability to enforce a judgment. Nowak, 94 F.3d. at 719. Public interest factors include the practical difficulties of unnecessarily hearing a case more fairly adjudicated somewhere else. Id. at 720. In this case, neither the private or public interest factors strongly favor litigating this claim in Nevada. As discussed above, the plaintiffs and Mr. Calkins' treating physician all reside in Massachusetts making proof from those sources readily available in this forum. A videotape recorded the events of Mr. Calkins' injury, which will be readily available for viewing in Massachusetts. Litigating this case in Nevada would impose a heavy burden upon the plaintiffs, which is not outweighed by the defendants' preference for the alternative forum. The defendants have not demonstrated that a serious unfairness would result from deciding this case in Massachusetts. See Nowak, 94 F.3d. at 720. Accordingly, this Court should deny the defendants' Motion to dismiss under the doctrine of forum non conveniens.

## VI.    THE PLAINTIFFS HAVE ALLEGED CLAIMS FOR NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION.

This Court draws every reasonable inference in the plaintiffs' favor when evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  See Pihl v. Massachusetts Dept. of Educ., 9 F. 3d. 184, 187 (1st Cir. 1993).  The defendant is only entitled to dismissal if it appears "to a certainty" that the plaintiffs would be unable to recover under any set of facts.  Roma Constr. Co. v. Arusso, 96 F. 3d. 566, 569 (1st Cir. 1996).

Under Nevada law, the tort of negligent hiring imposes upon employers a general duty to conduct a reasonable background check of a potential employee to ensure that he or she is fit for the position.  Hall v. SSF, Inc., 112 Nev. 1384, 1392 (1996); Burnett v. C.B.A. Security Serv., 107 Nev. 787, 789 (1991).  Nevada employers must also use reasonable care in the training, supervision and retention of employees, to make certain that employees are suitable for their employment.  Id., citing 27 Am. Jur. 2d Employment Relationship §§ 475-767 (1996).  An employer breaches this duty when it knew or should have known that an employee had dangerous propensities that were related to his or her job responsibilities.  Id.

Because a claim of negligent hiring, training, supervision or retention is so fact-specific, it is particularly ill-suited to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Cf. Hall, 112 Nev. at 1392 (judge improperly excluded evidence of employee's violent propensities, relevant to determine negligent hiring, training and supervision); Rockwell v. Sun Harbor Budget Suites, 112 Nev. 1217, 1227 (1996) (plaintiffs presented a genuine issue of material fact regarding Sun Harbor's hiring, training, and supervision of security guard); Oehler v. Humana, Inc., 105 Nev. 348, 351-52 (1989) (plaintiffs presented genuine issue of material facts regarding hospital's liability for the negligent supervision of a non-employee physician).

In this case, the defendants were obligated to ensure they did not hire an employee with known propensities which would be of harm to casino patrons, and, to train and supervise casino employees to reasonably secure patron safety. The plaintiffs alleged that the defendants' employee removed Mr. Calkins' chair while he stood to place a bet at a Roulette table. At the time of the incident, Mr. Calkins was engaged in an activity routine for casino patrons, and common to the environment for which Rio employees were hired, supervised and trained. Mr. Calkins' injury is therefore properly the subject of a claim of negligent hiring, training, supervision and retention of employees.

The plaintiff's Amended Complaint, which alleges Mr. Calkins was injured as a direct and proximate result of the negligence of an employee during a routine casino activity, alleges sufficient facts for the plaintiffs to pursue their claims that the defendants failed to use reasonable care in the hiring, training, supervision, and retention of its employees to ensure fitness for their employment at the casino. See Vinci v. Las Vegas Sands, Inc., 115 Nev. 243, 246 (1999). Accordingly, this Court should deny Defendant's motion to dismiss.

## CONCLUSION

For each of the reasons set forth above, plaintiffs Timothy and Christine Calkins respectfully request that this Court deny defendants motion to dismiss for lack of jurisdiction and on grounds of forum non conveniens.

In the event that this Court determines that additional information is necessary in order to conclude whether there is personal jurisdiction over the defendants, the plaintiffs respectfully

request that this Court order a discrete period of time to permit the plaintiffs to conduct appropriate and thorough discovery on matters relating to jurisdiction.

Respectfully submitted,

TIMOTHY W. CALKINS and
CHRISTINE A. CALKINS

By their attorneys,


/s/ Christopher R. O'Hara
Christopher R. O'Hara (BBO # 548611)
Jeffrey N. Catalano (BBO # 567798)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA  02109
(617) 720-2626

Dated:  November 11, 2004